Case No. 25-5416

IN THE

# United States Court of Appeals
# for the Sixth Circuit

MCKEE FOODS CORPORATION,
*Plaintiff-Appellee,*

—v.—

BFP INC.,
*Defendant,*

and

CARTER LAWRENCE, in his official capacity as COMMISSIONER OF THE
TENNESSEE DEPARTMENT OF COMMERCE AND INSURANCE,
*Defendant-Appellant.*

On Appeal from the United States District Court
Eastern District of Tennessee, Chattanooga Division
Case No. 1:21-cv-00279 (The Honorable Charles E. Atchley, Jr.)

## BRIEF OF PLAINTIFF-APPELLEE

WILLIAM H. PICKERING
PETER A. NEWMAN
CHAMBLISS, BAHNER & STOPHEL, P.C.
605 Chestnut Street, Suite 1700
Chattanooga, TN  37450
(423) 756-3000

MARK E. SCHMIDTKE
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
56 S. Washington Street, Suite 302
Valparaiso, IN 46383
(219) 242-8668

*Counsel for the Plaintiff-Appellee McKee Foods Corporation*

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

## **DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL**

## **INTEREST**

| Sixth Circuit Case Number:   25-5416 | Case Name: | McKee Foods Corporation v. BFP, Inc. and Carter Lawrence, in his official capacity as Commissioner of the Tennessee Department of Commerce and Insurance |
| --- | --- | --- |

Name of counsel:   William H. Pickering

Pursuant to Sixth Circuit Rule 26.1, Plaintiff-Appellee, McKee Foods Corporation, makes the following disclosure:

1.      Is said party a subsidiary or affiliate of a publicly owned corporation?  If yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

   **No.**

2.      Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

   **No.**

Disclosure and certification made this 29th day of August, 2025.

*s/William H. Pickering*
Counsel for McKee Foods Corporation

i

# TABLE OF CONTENTS

DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL INTEREST.................................................................................... i

TABLE OF AUTHORITIES ...........................................................v

STATEMENT IN SUPPORT OF ORAL ARGUMENT ...................... xi

STATEMENT OF JURISDICTION.................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW .....................2

STATEMENT OF THE CASE.......................................................3

    I.    Relevant Facts .................................................3

        A.    McKee and Its Self-Insured Health Plan ...................3

        B.    Thrifty Med Plus Pharmacy.................................5

    II.    The Challenged Laws – History and Administration...........7

        A.    Original Any Willing Pharmacy Statute; Acknowledgements of ERISA Preemption ...................................................7

        B.    Enactment of PC 569; Issuance of Bulletin 21-01......7

        C.    Administration of PC 569 .................................9

        D.    PC 1070.....................................................11

            1.    Origins of the Law......................................11

            2.    PC 1070 – Relevant Provisions .....................13

    III.    Administrative Complaints against McKee .....................14

        A.    Thrifty Med.................................................14

        B.    Preferred Cherokee Pharmacy ..........................15

    IV.    Commissioner's Intent to Enforce the Laws....................16

    V.    Procedural History; District Court Decision.....................17

SUMMARY OF ARGUMENT ...............................................................................19

ARGUMENT ....................................................................................................21

    I.      STANDARD OF REVIEW ................................................................21

    II.    MCKEE ESTABLISHED ITS RIGHT TO SUE THE COMMISSIONER......................................................................................22

        A.     MCKEE BRINGS THIS ACTION AS A PLAN SPONSOR AND FIDUCIARY UNDER ERISA AND THE DECLARATORY JUDGMENT ACT. ..............................................................................22

            1.     As plan sponsor and fiduciary, McKee has the right to relief under the Declaratory Judgment Act and to enjoin the Commissioner from enforcing state laws that prevent McKee from exercising its ERISA-granted rights to design and administer the Plan..................................................................22

            2.     As a fiduciary, McKee has the right under ERISA § 1132(a)(3) to enjoin the Commissioner from enforcing state laws that interfere with McKee's federal obligations to administer the Plan.................................................................25

            3.     The relief granted by the District Court applies to McKee's role as plan sponsor and its role as a fiduciary. ........28

        B.     MCKEE ESTABLISHED THE JURISDICTIONAL PREREQUISITES FOR ITS ACTION AGAINST THE COMMISSIONER ..........................................................................28

    III.   ERISA PREEMPTS THE CHALLENGED STATUTES. .................37

        A.     CRITERIA FOR ERISA PREEMPTION...............................38

        B.     THE CHALLENGED LAWS HAVE A "CONNECTION WITH" ERISA PLANS. .........................................................40

        C.     THE CHALLENGED LAWS MAKE REFERENCE TO AND REGULATE ERISA PLANS.............................................45

        D.     THE CHALLENGED LAWS ARE ALSO SUBJECT TO OBSTACLE PREEMPTION. ...........................................48

iii

IV.   THE COMMISSIONER'S SAVING CLAUSE ARGUMENT HAS NO BASIS IN LAW OR FACT AND WAS WAIVED. ...............................49

    A.   THE INSURANCE SAVING CLAUSE ARGUMENT WAS NEVER ASSERTED BELOW AND WAS WAIVED. ......................49

    B.   THE INSURANCE SAVING CLAUSE ARGUMENT IS MERITLESS. ..................................................................................51

        1.   Background of ERISA's Saving Clause and Deemer Clause. ................................................................................51

        2.   The Saving Clause Argument Ignores ERISA's Deemer Clause. ................................................................................52

        3.   The Saving Clause Argument Wrongly Assumes that McKee was Not Involved in the Design and Administration of the Pharmacy Network. ..............................................56

        4.   The Saving Clause Argument Ignores the Fact that the Statutes Expressly Apply to Self-Funded Plans. ......................57

    V.   THE DISTRICT COURT GRANTED APPROPRIATE RELIEF.....57

CONCLUSION..............................................................................................59

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) .....................................60

CERTIFICATE OF SERVICE ..........................................................................61

ADDENDUM: PLAINTIFF-APPELLEE'S DESIGNATION OF RELEVANT DOCUMENTS

STATUTORY ADDENDUM (FEDERAL RULE OF APPELLATE PROCEDURE 28(f))

# TABLE OF AUTHORITIES

*Cases*                                                                 *Page(s)*

*Aetna Health Inc. v. Davila,*
  542 U.S. 200 (2004) ..................................................................37

*Am. Civil Liberties Union of Kentucky v. McCreary Cnty.,*
  607 F.3d 439 (6th Cir. 2010) ....................................................21

*Am. Med. Sec. v. Bartlett*,
  111 F.3d 358 (4th Cir. 1997) ....................................................55

*America's Health Insurance Plans v. Hudgens*,
  742 F.3d 1319 (11th Cir. 2014)................................................55

*Ammex Inc. v. Cox*,
  351 F.3d 697 (6th Cir. 2003) ..................................................35

*Babbitt v. Farm Workers*,
  442 U.S. 289 (1979) ................................................................32

*Bethune-Hill v. Virginia State Bd. of Elections*,
  114 F. Supp. 3d 323 (E.D. Va. 2015)......................................46

*California Div. of Lab. Standards Enf't v. Dillingham Const., N.A., Inc.*,
  519 U.S. 316 (1997) .................................................. 38, 46, 47

*Christian Healthcare Centers, Inc. v. Nessel*,
  117 F.4th 826 (6th Cir. 2024)..................................................30

*CIGNA Healthplan of Louisiana, Inc. v. Louisiana ex rel. Ieyoub*,
  82 F.3d 642 (5th Cir. 1996).....................................................39

*Clements v. Fashing*,
  457 U.S. 957 (1982) ................................................................30

*Crawford v. United States Dep't of Treasury*,
  868 F.3d 438 (6th Cir. 2017)...................................................30

*Crugher v. Prelesnik*,
761 F.3d 610 (6th Cir. 2014) ............................................................. 22

*Davis v. U.S.*,
499 F.3d 590 (6th Cir. 2007) ......................................................... 24, 25

*Denny's, Inc. v. Cake*,
364 F.3d 521 (4th Cir. 2004) ............................................................. 26

*Diamond Alternative Energy, LLC v. Env't Prot. Agency*,
145 S. Ct. 2121 (2025) ................................................................. 30, 45

*District of Columbia v. Greater Washington Bd. of Trade*,
506 U.S. 125 (1992) ....................................................................... 24

*PCMA v. District of Columbia*,
613 F.3d 179 (D.C. Cir. 2010) ........................................................... 56

*Doe v. Horne*,
737 F. Supp. 3d 758 (D. Ariz. 2024) .................................................... 46

*Doe v. Lee*,
102 F.4th 330 (6th Cir. 2024) ........................................................... 35

*FMC Corp. v. Holliday*,
498 U.S. 52 (1990) ..................................................................... 36, 52

*Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. California*,
463 U.S. 1 (1983) .................................................................... passim

*Freightliner Corp.  v. Myrick*,
514 U.S. 280 ............................................................................. 49

*Friends of George's Inc., v. Mulroy*,
108 F.4th 431 (6th Cir. 2024) ........................................................... 31

*Gammons v. Adroit Med. Sys., Inc.*,
91 F.4th 820 (6th Cir. 2024) ............................................................ 36

*Gladstone Realtors v. Village of Bellwood*,
441 U.S. 91 (1979) ...................................................................... 34

*Gobeille v. Liberty Mut. Ins. Co.*,
  577 U.S. 312 (2016) ................................................................ 24, 36, 58

*Griffin v. AT&T Servs., Inc.*,
  No. 1:22-CV-00701-SEG, 2023 WL 3213550 (N.D. Ga. Mar. 21, 2023)...........41

*Howard v. City of Beavercreek*,
  276 F.3d 802 (6th Cir. 2002)...................................................................21

*Ingersoll–Rand Co. v. McClendon*,
  498 U.S. 133 (1990) ...............................................................................47

*Jodway v. Orlans*, PC,
  759 F. App'x 374 (6th Cir. 2018)................................................... 33, 50

*Kentucky Ass'n of Health Plans, Inc. v. Nichols*,
  227 F.3d 352 (6th Cir. 2000) .......................................................... passim

*Kline v. Mortgage Electronic Sec. Systems*,
  2011 WL 5325521 (S.D. Ohio Nov. 3, 2011) ......................................34

*Littler v. Ohio Ass'n of Pub. Sch. Employees,*
  88 F.4th 1176 (6th Cir. 2023)...................................................................24

*Mackey v. Lanier Collection Agency & Service, Inc.,*
  486 U.S. 825 (1988) ...............................................................................47

*McKay v. Federspiel*,
  823 F.3d 862 (6th Cir.  2016).................................................................31

*McKee Foods Corporation v. BFP Inc.*,
  Case No. 1:21-cv-279, 2025 WL 968404 (E.D. Tenn.  March 31, 2025)... passim

*McKee Foods Corporation v. BFP, Inc.*,
  Case No. 23-5170, 2024 WL 1213808 (6th Cir. Mar. 21, 2024) ................ 6, 8, 17

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007) ...............................................................................30

*Metropolitan Life Ins. Co. v. Massachusetts,*
  471 U.S. 724 (1985) ................................................................... 53, 54

*Mulready v. Pharm. Care Mulready v. Pharm. Care Mgmt. Ass'n*,
No. 23-1213, 2025 WL 1787716 (U.S. June 30, 2025) ................................ 40, 45

*N.Y. State Conf. of Blue Cross and Blue Shield Plans v. Travelers Ins. Co.*,
514 U.S. 645 (1995) ............................................................................................24

*Online Merchants Guild v. Cameron*,
995 F.3d 540 (6th Cir. 2021) ............................................................................31

*PCMA v. Rowe*,
429 F.3d 294 (1st Cir. 2005) .............................................................................57

*Pharm. Care Mgmt. Ass'n v. Mulready*,
78 F.4th 1183 (10th Cir. 2023) ................................................................. passim

*Pharm. Care Mgmt. Ass'n v. Wehbi*,
18 F.4th 956 (8th Cir. 2021) ........................................................................ 38, 55

*Plumbers and Steamfitters Local No. 150 Pension Fund v. Vertex Const. Co., Inc.*,
932 F.2d 1443 (11th Cir. 1991) .........................................................................34

*Prudential Ins. Co. of Am. v. Nat'l Park Medical Center*,
413 F.3d 897 (8th Cir. 2005) .............................................................................55

*Rush Prudential HMO, Inc., v. Moran*,
536 U.S. 355 (2002) ...........................................................................................53

*Rutledge v. Pharmaceutical Care Management Association*,
592 U.S. 80 (2020) ..................................................................................... passim

*Scottsdale Ins. Co. v. Flowers*,
513 F.3d 546 (6th Cir. 2008) ................................................................ 21, 50, 51

*Shaw v. Delta Air Lines, Inc.*,
463 U.S. 85 (1983) ..................................................................................... passim

*Sherfel v. Gassman*,
748 F.Supp.2d 776 (S.D. Ohio 2010)................................................................26

*Sherfel v. Newson*,
768 F.3d 561 (6th Cir. 2014)....................................................................... 26, 49

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014) ......................................................................... 30, 31

*Texas Pharmacy Ass'n v. Prudential Ins. Co. of Am.*,
  105 F.3d 1035 (5th Cir. 1997) .................................................................39

*Thiokol Corp. v. Dept. of Treasury*,
  987 F.2d 376 (6th Cir. 1993) ........................................................... 25, 26

*Thiokol Corp. v. Roberts*,
  76 F.3d 751 (6th Cir. 1996) ........................................................ 46, 47, 48

*Thurman v. Yellow Freight Sys., Inc.*,
  97 F.3d 833 (6th Cir. 1996) ............................................................. 33, 50

*Washington Phys. Serv. Ass'n. v. Gregoire*,
  147 F.3d 1039 (9th Cir. 1998) ......................................................... 48, 56

*Welty v. Dunaway*,
  749 F. Supp. 3d 882 (M.D. Tenn. 2024) ..................................................46

*Wright v. Spaulding*,
  939 F.3d 695 (6th Cir. 2019) ..................................................................42

*Yoder v. Bowen*,
  No. 24-1593, 2025 WL 2170165 (6th Cir. July 31, 2025)...................... 30, 31, 37

*Statutes*

28 U.S.C. § 1291......................................................................................1

28 U.S.C. § 1331........................................................................... 1, 23, 25

28 U.S.C. § 2201......................................................................................1

28 U.S.C. § 2202......................................................................................1

29 U.S.C. § 1001............................................................................... xi, 45

29 U.S.C. § 1132............................................................................... passim

29 U.S.C. § 1144............................................................................... passim

T.C.A. § 56-2-305...........................................................................8

T.C.A. § 56-7-2359.................................................................passim

T.C.A. § 56-7-3102.................................................................passim

T.C.A. § 56-7-3110...........................................................................8

T.C.A. § 56-7-3120.................................................................passim

T.C.A. § 56-7-3121.................................................................passim

T.C.A. § 56-7-3122................................................................ 14, 45, 57

*Rules*

Fed. R. App. P. 32........................................................................60

Fed. R. Civ. P. 8..........................................................................50

Sixth Circuit Rule 26.1 ................................................................ i

Sixth Circuit Rule 32...................................................................60

*Other Authorities*

Brief for the United States as Amicus Curiae*, Mulready v. Pharm. Care Mgmt. Ass*'n, No. 23-1213, 2025WL 1533452 (U.S. May 27, 2025) ................................44

## <u>STATEMENT IN SUPPORT OF ORAL ARGUMENT</u>

Plaintiff-Appellee McKee Foods Corporation ("McKee") respectfully requests oral argument.  The District Court's decision and the appeal filed by Commissioner Carter Lawrence (the "Commissioner") present important legal issues, including issues regarding federal preemption of state laws purporting to regulate self-funded ERISA[1] benefit plans and whether the Commissioner can avoid a decision on the merits by advancing so-called threshold issues.  The Commissioner's appeal also presents significant issues of waiver, since the Commissioner's Brief as Appellant includes defenses and arguments not raised in the District Court.

Oral argument will assist this Court in addressing the issues presented by this case and the law applicable to the undisputed facts and documentary evidence.  The opportunity to question counsel regarding these matters will likewise be beneficial to the Court and will enable the parties to address the issues further.

---

[1] The Employer Retirement Income Security Act of 1974, as amended, as amended, 29 U.S.C. § 1001, *et seq*.

## STATEMENT OF JURISDICTION

**A.    Subject Matter Jurisdiction of the United States District Court:**

Subject matter jurisdiction was vested in the District Court pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and 28 U.S.C. § 1331; and ERISA, 29 U.S.C. § 1132(e).  *See* First Amended Complaint ("Complaint"), R.83, PageID# 1070-71, 1080-83 (¶¶ 19, 52-63).

**B.    Subject Matter Jurisdiction of the United States Court of Appeals:**

This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

The issue presented by this appeal is whether the District Court's holdings that the any-willing-provider and anti-steering provisions of Tennessee Code Annotated (T.C.A.) §§ 56-7-3120 and 3121 are preempted by ERISA were correct and, if so, whether the Commissioner was properly enjoined from enforcing the preempted laws against McKee and its pharmacy benefits manager ("PBM"). Additional questions which will inform this Court's decision include:

1.      Whether McKee's First Amended Complaint stated a claim upon which relief can be granted.

2.      Whether McKee has standing to sue the Commissioner.

3.      Whether the challenged laws are preempted by ERISA.

4.      Whether the Commissioner waived arguments that he failed to assert below.

## STATEMENT OF THE CASE

### I.    Relevant Facts

#### A.    McKee and Its Self-Insured Health Plan

McKee is the family-owned manufacturer of Little Debbie® snacks, Sunbelt Bakery® snacks, Drake's® Cakes, and other food products.  McKee is headquartered in Collegedale, Hamilton County, Tennessee, and has facilities in multiple states and employees working throughout the continental United States.  Complaint, R.83, PageID# 1066, 1069.  McKee and its subsidiaries have a total of about 6,800 employees, approximately 3,200 of whom work in Tennessee and approximately 3,600 of whom work in other states.  *See id.* PageID# 1069; Declaration of Justin Jolls, R.118-1, PageID# 1543-44.

McKee is the sponsor, administrator, and fiduciary of the McKee Foods Corporation Employees Health and Supplemental Benefits Program ("Plan").  Complaint, R.83, PageID# 1069 (¶13); Jolls Dec., R.118-1, PageID# 1543, 1547-1610 (¶5 and Ex. A (Plan Document)).[2]  The Plan provides medical and drug benefits to eligible employees and their eligible dependents located throughout the United States.  Complaint, R.83, PageID# 1069, 1071-72; Jolls Dec., R.118-1, PageID# 1543-44, 1588-1610 (¶7 and Ex. A, Attachment B (PDP)).

---

[2] Mr. Jolls' Declaration (R.118-1) includes the McKee Plan Document (Exhibit A to the declaration) along with the Plan's Prescription Drug Program ("PDP") (Exhibit A, Attachment B).

It is undisputed that the Plan is governed by ERISA and is self-insured, with benefits funded by McKee and plan participants.  Complaint, R.83, PageID# 1066, 1071 (¶¶ 2, 22-24); Jolls Dec., R.118-1, PageID# 1543 (¶6), 1582-83, 1586-87. Commissioner Lawrence admitted these facts.  Answer to First Amended Complaint ("Commissioner's Answer"), R.117, PageID# 1526, 1528 (¶¶ 2, 23). During the proceedings below, neither the State of Tennessee nor the Commissioner argued that the Plan was insured or that the challenged laws at issue in this case regulated insurance.  *See generally* State's and Commissioner's Motion to Dismiss, R.95; Commissioner's Answer, R.117; Commissioner's Summary Judgment Filings, R.122-123, 134, 140.

McKee established the design and structure of its Plan, including the PDP, and is actively involved in administration of the Plan.  Jolls Dec., R.118-1, PageID# 1544-46, 1557, 1588-1610 (¶¶ 8-12 and Ex. A, p. 8 and PDP); Declaration of Shawn Pellington, R.139-1, PageID# 2157 (¶4).  The Commissioner never advanced any argument to the contrary below.

Among other things, McKee determines eligibility for participation in the Plan and the PDP, benefits and coverage, the providers of those benefits, and the applicable premiums, copayments and coinsurance.  Jolls Dec., R.118-1, PageID# 1544-45, 1556-57, 1588-1610 (¶¶ 9-11, Ex. A pp. 7-8 and PDP).  McKee also offers lower copayments to participants who have prescriptions filled at the McKee

Foods Family Pharmacy ("McKee Pharmacy") that McKee established and funded for its employees' benefit. *Id*. PageID# 1545-46, 1604-05 (¶12 and PDP).

As part of its design of the PDP, McKee established a network of pharmacies. Complaint, R.83, PageID# 1073 (¶29); Commissioner's Answer, R.117, PageID#1529 (¶29); Jolls Dec., R.118-1, PageID# 1545, 1588-1610 (¶10 and PDP). McKee also established a preferred pharmacy network for participants who live and work in states *other than* Tennessee. Jolls Dec., R.118-1, PageID# 1545, 1591, 1594, 1597, 1600, 1605 (¶11 and pages from PDP referencing McKee's Preferred Pharmacy Network). Participants have lower co-pays at pharmacies in the preferred network. Because of the challenged laws, McKee does not have a preferred pharmacy network in Tennessee but does in other states. *See id*.

A PBM provides certain administrative services for the PDP. Complaint, R.83, PageID# 1073 (¶30); Commissioner's Answer, R.117, PageID# 1529 (¶30); Jolls Dec., R.118-1, PageID# 1543.

### B. Thrifty Med Plus Pharmacy

The conduct of Defendant BFP Inc. d/b/a Thrifty Med Plus Pharmacy ("Thrifty Med") and McKee's actions in response show the importance of McKee's role as Plan fiduciary. Thrifty Med was in the Plan's network but was removed after a participant complained and an audit was conducted of Thrifty

5

Med's practices.  Complaint, R.83, PageID# 1073.  Thrifty Med's conduct was egregious.  Thrifty Med overbilled by submitting higher charges for three 30-day supplies of medication when 90-day supplies were prescribed and filled, signed the participant's name to prescription logs without her knowledge, and altered prescription copies and labels that Thrifty Med submitted as part of its appeal of the audit findings.  Pellington Dec., R.139-1, PageID# 2156-59 and 2161-73 (¶¶ 3-4, 6-9, and Audit Report attached as Exhibit A); Second Declaration of Angela Sharps, R.45-1, PageID# 435-36 (¶¶ 5-6).

McKee and its PBM jointly decided to remove Thrifty Med from the network.  The Commissioner did not dispute this point in the District Court.  Termination was effective July 1, 2019.  Complaint, R.83, PageID# 1073; Declaration of Angela Sharps, R.35-2, PageID# 192-193, 253; Second Sharps Dec., R.45-1, PageID# 436; Pellington Dec., R.139-1, PageID# 2158-2159.

Thrifty Med protested and over the next three years asserted that it should be reinstated.  Complaint, R.83, PageID# 1073-74; *McKee Foods Corporation v. BFP, Inc.*, Case No. 23-5170, 2024 WL 1213808 at *1-*3 (6th Cir. Mar. 21, 2024) ("*McKee Foods I*").  Thrifty Med relied on Tennessee Public Chapter 569 ("PC 569"), discussed below, shortly after it became effective on July 1, 2021.

## II.    The Challenged Laws – History and Administration

### A.    Original Any Willing Pharmacy Statute; Acknowledgements of ERISA Preemption

For many years, the Tennessee Legislature and Attorney General recognized that the State could not regulate self-funded ERISA plans. In 1998, Tennessee adopted its original "Any Willing Pharmacy" statute ("AWP Statute"), T.C.A. § 56-7-2359.[3] Tennessee recognized the statute could not apply to self-funded ERISA plans. *See* Tenn. Atty. Gen. Op. No. 04-001 (Jan. 6, 2004). R.119-1, Page ID## 1649, 1658 (discussing legislative history and recognizing ERISA preemption). When the statute was amended in 2001, the enabling act specifically exempted self-funded ERISA plans.[4]

In 2016, the Tennessee Attorney General again confirmed ERISA's preemption of state law. Tenn. Atty. Gen. Op. No. 16-42 at p. 2 (Dec. 7, 2016), R.119-2, PageID# 1664.

### B.    Enactment of PC 569; Issuance of Bulletin 21-01

In 2021, Tennessee adopted PC 569, most of which became effective July 1, 2021.[5] The law amended T.C.A. Title 56, Chapter 7, Parts 31 and 32 (herein "Parts 31 and 32"), and imposed additional restrictions on PBMs and other "covered entities" (previously defined to include employers and self-insured

---

[3] 1998 Tenn. Laws Pub. Ch. 1033 (H.B. 2949), Section 9.
[4] 2001 Tenn. Laws Pub. Ch. 236 (S.B. 528), Section 9.
[5] *See* Statutory Addendum attached.

entities).  *See* Complaint, R.83, PageID# 1075.  Section 2 of PC 569 added what became T.C.A. § 56-7-3120.

T.C.A. § 56-7-3120(a) regulates the terms of health benefit plans by prohibiting PBMs and covered entities from requiring plan participants "to pay an additional fee, higher copay, higher coinsurance, second copay, second coinsurance, or other penalty when obtaining prescription drugs, including specialty drugs from a contracted pharmacy."  Copays and coinsurance are terms of the Plan were determined by McKee.  Jolls Dec., R.118-1, PageID# 1545, 1589-1601 (¶10 and PDP).

As originally enacted in PC 569, T.C.A. § 56-7-3120(b) prohibited PBMs and covered entities from interfering with a patient's "right to choose a contracted pharmacy" in a manner that violated T.C.A. § 56-7-2359 (original AWP statute) or by other means, including inducement, steering, or offering financial or other incentives.  PC 569 also created a new remedy that would subject any PBM or covered entity that violated § 56-7-2359 to a range of penalties imposed by the Commissioner.  *See* T.C.A. §§ 56-2-305(a), 56-7-3110; *McKee Foods I*, 2024 WL 1213808 at *2.

PC 569 made no changes to the definition of "covered entity" contained in T.C.A. § 56-7-3102(1), which made no reference to ERISA plans.  But just a few days after PC 569 became effective, the Commissioner issued a Bulletin to "All

Pharmacy Benefits Managers" announcing his intent to enforce the law against ERISA plans. Tennessee Department of Commerce and Insurance Bulletin 21-01 (July 8, 2021), R.119-3, PageID# 1677-78.

Bulletin 21-01 mirrored the views of influential legislators that PC 569, including its AWP provisions, should be applied to ERISA plans. The Commissioner participated in multiple meetings with House Speaker Cameron Sexton and Lieutenant Governor Randy McNally (Speaker of the Tennessee Senate), during which they discussed the bill that became PC 569 and ERISA preemption. Lawrence Depo., R.119-4, Page ID## 1700-05. Speaker Sexton's mistaken view was that the Supreme Court's decision in *Rutledge*[6] permitted state regulation and that AWP provisions were not preempted. *Id*. Lieutenant Governor McNally had similar views. Lawrence Depo., R.119-4, PageID# 1704.

### C.    Administration of PC 569

The Department's Section of Consumer Insurance Services, led by Director Vickie Trice, administered PC 569. Deposition of Vickie Trice, R.119-5, Page ID## 1755-57, 1762-63. Multiple responses to complaints for alleged violations of PC 569 asserted the Department had no jurisdiction because of ERISA preemption. *Id*., PageID# 1758. In several cases, the Section of Consumer Insurance Services issued decisions agreeing the Department lacked jurisdiction because ERISA

---

[6] *Rutledge v. Pharmaceutical Care Management Association*, 592 U.S. 80 (2020).

9

preempted the Tennessee law. *Id*., PageID# 1758-61, 1785-86 (Depo. Ex. 2). *See also* Deposition of Jud Jones, R.119-6, PageID# 1808.

Thrifty Med relied on PC 569 and submitted a request for reinstatement to McKee's PBM, MedImpact Healthcare Systems, Inc. ("MedImpact"). After MedImpact denied the request, Thrifty Med contacted Ms. Trice, argued that PC 569 required reinstatement, and relied on Bulletin 21-01. Trice Depo., R.119-5, PageID# 1764-67, 1781-82. Ms. Trice consulted with Scott McAnally, Director of the Department's Section of Insurance, who agreed the section of PC 569 allowing customers to select a pharmacy of their choice presented a **benefit design** issue (resulting in ERISA preemption). *Id*., PageID# 1768-70, 1780-83.

Commissioner Lawrence agreed with Mr. McAnally's assessment and confirmed that state laws impacting plan design are preempted under *Rutledge*. Lawrence Depo., R.119-4, PageID# 1689-90, 1693-94, 1709; s*ee* Deposition of Scott McAnally, R.119-7, PageID# 1855-56. Despite this, the Commissioner testified that it was "perfectly fine for the State of Tennessee to be telling employers and employee benefit plans how to design and structure their plans." Lawrence Depo., R.119-4, PageID# 1695-96. Jud Jones, the Department's Director of PBM Compliance, hired in early 2023 to administer the statutes, **admitted that the laws specifically targeted and purported to regulate the**

10

**design, structure, terms and conditions of ERISA plans**.  Jones Depo., R.119-6, PageID# 1792, 1803.

>   D.   PC 1070

>>   1.   Origins of the Law

A perceived lack of enforcement of PC 569 did not sit well with influential legislators or the Tennessee Pharmacists Association ("Association").  Lawrence Depo., R.119-4, PageID# 1706-08.  Association Director Anthony Pudlo emailed Ms. Trice on November 29, 2021, expressing concern about the lack of "enforcement action on any of the complaints against PBMs . . . in the face of PC 569 and TDCI's bulletin in July."  *Id.*, PageID# 1747-48 (Ex. 3).  State Senator Shane Reeves was copied on the email.  *Id.*, PageID# 1747.  After some additional exchanges, Senator Reeves, himself a pharmacist, decided to weigh in and stated, "I am not sure why we are passing laws in the first place if they are going to be ignored."  *Id.*, PageID# 1745.  This got the attention of Alex Lewis, Assistant Commissioner and Senior Advisor to the Commissioner, who responded that the Department was "certainly staying engaged on implementation of and enforcement under PC569" and referenced recent communications between the Senator and the Commissioner "about getting together soon to discuss our direction."  *Id.*, PageID# 1719, 1745.

11

The email exchanges continued with Senator Reeves expressing specific concerns about **McKee Foods' lawsuit against Thrifty Med alleging ERISA preemption.** *Id.*, PageID# 1733, 1743. Senator Reeves stated:

> This [the McKee lawsuit] underscores why we must have language to enforce the PBM law. (Things are quickly getting out of hand and could be quite contentious in January without the Department leading us out of this situation)

*Id.*, PageID# 1733-34, 1743.

There were multiple meetings between the Commissioner, Mr. Lewis and powerful members of the General Assembly, including House Speaker Sexton, Lieutenant Governor McNally, Senator Reeves and others. *Id.*, PageID# 1722-33. The legislators were not happy. *Id.*, PageID# 1732-33. The Commissioner acknowledged that the subject of ERISA preemption was likely discussed and that the intent of the planned legislation "was to specifically include self-insured ERISA plans within the coverage of the law." *Id.*, PageID# 1727-28.

As the Commissioner's testimony made clear, **the end result was the eventual enactment of Public Chapter 1070 ("PC 1070").** *Id.*, PageID# 1735. According to Association Director Pudlo, the Association and its counsel actually *crafted* this special-interest legislation. Jones Depo., R.119-6, PageID# 1849 (Ex. 17). The laws only benefit pharmacists. Lawrence Depo. R.119-4, PageID# 1740-1741.

12

### 2.    PC 1070 – Relevant Provisions

PC 1070 was passed on April 27, 2022, and became effective January 1, 2023.  *See* 2022 Tenn. Laws Pub. Ch. 1070 (H.B. 2661), included in Statutory Addendum attached.

T.C.A. § 56-7-3120(a) was unchanged.  PC 1070 split T.C.A. § 56-7-3120(b) into two subsections.  T.C.A. § 56-7-3120(b)(1) retained the statute's prohibition against a PBM's or a covered entity's "interference" with a "patient's right to choose" a contracted pharmacy in a manner that violates T.C.A. § 56-7-2359.  Amended Section 56-7-3120(b)(2) made the statute's "anti-steering" component more specific by prohibiting financial or other incentives to persuade a patient to use a pharmacy owned by or financially beneficial to a PBM or covered entity.

PC 1070 further amended Parts 31 and 32[7] to make their substantive regulations, requirements and restrictions specifically applicable to ERISA plans. T.C.A. § 56-7-3102(1)(A) now includes plans governed by ERISA in the definition of a "covered entity" subject to provisions of Part 31, including the any willing pharmacy and anti-steering provisions of T.C.A. § 56-7-3120.  Leaving no stone unturned, the Legislature provided in PC 1070 that Parts 31 and 32, *in their*

---

[7] T.C.A. Title 56, Chapter 7, Parts 31 and 32.

13

*entireties*, would apply to ERISA plans.[8]  The Legislature even took the extraordinary step of including ERISA plans *in the definition of a PBM*.[9]

PC 1070 created a new section codified as T.C.A. § 56-7-3121.  The new section requires that any willing pharmacy be included in networks (both preferred networks and non-preferred networks) and contains restrictions on copayments, other fees and financial inducements that may be charged plan participants – all central matters of plan design and administration.

## III.    Administrative Complaints against McKee

### A.    Thrifty Med

Thrifty Med filed three administrative complaints, alleging that McKee and its PBM (MedImpact) violated the original AWP statute (T.C.A. § 56-7-2359) and PC 569.  Declaration of Jennifer Johnson, R.35-1, PageID# 178-89 (Exs. A-C, Complaint Nos. 71028, 71356, 71428).  MedImpact responded on behalf of the Plan that the statutes did not apply to self-funded ERISA plans.  McKee's Supplemental Brief, Ex. 1, R.62-1, PageID# 701-05 (MedImpact Response to Complaint No. 71356).  The Department dismissed Complaint No. 71356, stating that it had "no jurisdiction pertaining to a self-funded/self-insured benefit plan" governed by ERISA.  Declaration and Stipulation of Thrifty Med Plus Pharmacy,

---

[8] *See* 2022 Tenn. Laws Pub. Ch. 1070 (H.B. 2661), Sections 7, 8; T.C.A. § 56-7-3122; T.C.A. § 56-7-3209.
[9] *See* T.C.A. § 56-7-3102(5).

R.38-2, PageID# 351-55 (Ex. A); Trice Depo., R.119-5, PageID# 1785-86 (Ex. 2).[10]

## B.   Preferred Cherokee Pharmacy

The month after PC 1070 became effective, a pharmacy in Cleveland, Tennessee, filed a complaint against McKee and its PBM arguing they violated the anti-steering provision in T.C.A. § 56-7-3120.  Cleveland WoRx LLC d/b/a Preferred Cherokee Pharmacy ("Preferred Cherokee") claimed that the law prohibited McKee from offering lower copays at the McKee Pharmacy.  *See* Pharmacy Benefit Manager Complaint Form, R.119-9, PageID# 1884-86.

Preferred Cherokee demanded that McKee either deprive participants of lower copays at the McKee Pharmacy or require McKee to increase benefits by providing lower copays to employees who use *other* pharmacies.  Either way, Preferred Cherokee was demanding that McKee violate or change the terms of the Plan.  *See* Jolls Dec., R.118-1, PageID# 1545-46, 1589-1601 (¶12 and PDP).

McKee promptly responded in a letter emailed to Mr. McAnally, invoking ERISA preemption.  Some 2½ years later, the Department has not responded to

---

[10] Addressing Thrifty Med's other two administrative complaints (Nos. 71028 and 71428), the Department stated that its mediation efforts had been exhausted and the Department was closing its files.  Thrifty Med Declaration, R.38-2, PageID# 353-55 (Ex. A); Trice Depo., R.119-5, PageID# 1787 (Ex. 3).

15

McKee or made a decision.  Jones Depo., R.119-6, PageID# 1796-97; McAnally

Rule 30(b)(6) Depo., R.119-8, PageID# 1875-79.

## IV.     Commissioner's Intent to Enforce the Laws

The Department and its officials have made clear that they intend to fully

enforce Parts 31 and 32 and the Department's regulations against ERISA-governed

plans like McKee's.  Rule 30(b)(6) Depo., R.119-8, PageID# 1880-81; Jones

Depo., R.119-6, PageID# 1794-95, 1803-04; McAnally Depo., R.119-7, Page ID##

1864-65.  In rulemaking proceedings, McKee's counsel submitted a comment

letter dated February 7, 2024, urging the Department to clarify that its proposed

rules would not apply to self-funded ERISA plans.  R.81-1, PageID# 992-995.

Other stakeholders, including the Pharmaceutical Care Management Association

("PCMA"), likewise objected to the Department's enforcement of the Tennessee

PBM laws against ERISA plans and their sponsors.  *See* PCMA letter to

Commissioner Lawrence, R.81-2, PageID# 1005-06.  In his response to PCMA,

the Commissioner stated unequivocally that he intended to enforce the laws against

ERISA plans.  See Letter from Commissioner Lawrence (R.81-3, PageID# 1008-

09).

The Department's intent to enforce the statutes against ERISA plans was

again confirmed, explicitly, in the Department's written comments that

accompanied its final rules implementing the challenged legislation.  *See*

Rulemaking Hearing Rule(s) Filing Form, R.119-6, PageID# 1825-26 (Comments 22 and 29).

Jud Jones, Director of PBM Compliance, acknowledged that the laws specifically targeted ERISA plans and would be enforced against them, despite protests and objections by McKee and other stakeholders. Jones Depo., R.119-6, PageID# 1803-04. Commissioner Lawrence confirmed that, despite concerns of ERISA preemption raised during the comment period, it was his "decision to move forward with the rules, which would include enforcement actions against self-funded ERISA plans . . ." Lawrence Depo., R.119-4, 135-1, PageID# 1737, 2050 (Department would enforce the laws against ERISA self-funded plans "unless a court told us otherwise.").

The Commissioner also stated that in deciding to proceed with enforcement, he gave no consideration to whether the laws were preempted by ERISA. Lawrence Depo., R.119-4, PageID# 1737-38. The Department's view is that state law (PC 1070) takes precedence over ERISA. *Id.*, PageID# 1738.

## V.    Procedural History; District Court Decision

The procedural history of this action is summarized in the District Court's decision. *McKee Foods Corporation v. BFP Inc*., Case No. 1:21-cv-279, 2025 WL 968404 at *1-*3 (E.D. Tenn. March 31, 2025) ("District Court Decision"). Following this Court's decision and remand in *McKee Foods I*, McKee amended

17

its Complaint to include allegations of preemption regarding PC 1070 and to add the State of Tennessee and the Commissioner as named defendants. Motion for Leave to Amend Complaint, R.78, PageID# 902-04.[11] McKee's First Amended Complaint (R. 83) sought declaratory, injunctive and other relief, focusing specifically on ERISA's preemption of T.C.A. §§ 56-7-3120 and 56-7-3121.

The District Court held that McKee had standing to sue the Commissioner, that McKee stated an actionable claim, that the exercise of the Court's jurisdiction under the Declaratory Judgment Act was warranted, and that the statutes had an impermissible connection with ERISA plans and were preempted. District Court Decision at *4-*10. The District Court held that the facts supported injunctive relief and permanently enjoined the Commissioner from enforcing the challenged laws against McKee, "whether through direct enforcement against the Health Plan or indirect enforcement against McKee's PBM for actions taken on the Health Plan's behalf." *Id.* at *10. The Court recognized that the injunction must encompass action against McKee's PBM, since plans have no choice other than to contract with PBMs to assist in the administration of pharmacy benefits. *Id.*, n.8.

When the parties filed dispositive motions on December 31, 2024, Thrifty Med for the first time unequivocally stipulated that it would not pursue reinstatement to McKee's PDP under any past, current, or future version of

---

[11] The State previously intervened in the case. Order, R.26.

Tennessee's any-willing-provider laws.  Declarations and Stipulations of Greg and Julie Bohannon, R.120-1, 120-2, PageID# 1891, 1894.  The District Court concluded that McKee's claims against Thrifty Med were now moot, noting that the injunction against the Commissioner would prevent Thrifty Med from relying on the challenged laws in any event.  District Court Decision at *11, *14.

## SUMMARY OF ARGUMENT

This case is about ERISA preemption of special-interest pharmacy legislation *specifically applicable* to ERISA plans, including self-funded plans.  ERISA preempts state laws that relate to any employee benefit plan.  The parties agree that a law "relates to" an ERISA plan if it either has a "connection with" or a "reference to" such a plan.  The statutes McKee challenges, specifically T.C.A. §§ 56-7-3120 and 56-7-3121, satisfy both requirements and are also subject to obstacle or conflict preemption.

The challenged laws have a connection with ERISA plans because they purport to regulate benefit design and structure, govern central matters of plan administration, and interfere with nationally uniform plan administration.  Among other things, the laws' any-willing-provider requirements and related prohibitions against plan discounts and other incentives are part of *benefit design* which the plan – not the state – has the right to determine.  These matters are actually plan *terms*, as can be seen from McKee's Plan Document.

19

The laws also interfere with McKee's fiduciary obligation to administer the Plan in the best interest of participants.  The best example is in this case where the laws would require McKee to include in its network pharmacies that have engaged in wrongdoing harmful to the Plan and its participants.

The laws interfere with nationally uniform plan administration by imposing requirements in Tennessee that do not apply in other states where McKee does business.  The laws are also subject to obstacle or conflict preemption because they obstruct ERISA's purposes and objectives, including nationally uniform plan administration and the rights of plan sponsors and fiduciaries to design and administer their plans in the best interest of participants.

The Commissioner has the unenviable task of arguing that laws specifically designating ERISA plans for substantive regulation really don't have a connection with or reference to the plans they target.  Throughout this litigation, the Commissioner sought to avoid a decision on the merits, arguing that McKee lacked standing and that its Complaint failed to state a claim.  The District Court rightly rejected these arguments and proceeded to decide the "central question underlying this case,"[12] ERISA preemption of the challenged laws.

On appeal, the Commissioner and his amici resurrect their "threshold" arguments while adding new ones *never presented to the District Court*.  Notably,

---

[12] District Court Decision at *8.

although it is undisputed that McKee's ERISA plan is not insured, the Commissioner now argues that the challenged laws are "saved" from preemption as laws regulating insurance. This argument was *never* made in the District Court and was therefore waived. The argument is meritless in any event because, among other things, the insurance "saving" clause does not apply to *non-insured* self-funded plans.

McKee has standing because its ERISA plan is the object of laws that interfere with McKee's constitutionally protected rights. The Commissioner has repeatedly threatened enforcement, and McKee has been the subject of complaints alleging violations of the laws. McKee's Complaint states claims actionable under ERISA, and McKee demonstrated its right to the declaratory and injunctive relief the District Court granted.

## ARGUMENT

### I.   STANDARD OF REVIEW

On appeal of summary judgment, this Court reviews the district court's legal conclusions de novo and its factual findings for clear error. *Howard v. City of Beavercreek*, 276 F.3d 802, 805 (6th Cir. 2002). Grants of declaratory and injunctive relief, including the *scope* thereof, are reviewed only for abuse of discretion. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008); *Am. Civil Liberties Union of Kentucky v. McCreary Cnty.*, 607 F.3d 439, 445 (6th Cir. 2010).

21

## II.    MCKEE ESTABLISHED ITS RIGHT TO SUE THE COMMISSIONER.

### A.    MCKEE BRINGS THIS ACTION AS A PLAN SPONSOR AND FIDUCIARY UNDER ERISA AND THE DECLARATORY JUDGMENT ACT.

The Commissioner has the burden to show McKee failed to state a claim for relief.  *Crugher v. Prelesnik*, 761 F.3d 610, 614 (6th Cir. 2014).  The Commissioner's argument appears to be that McKee has no right to sue under ERISA as a plan sponsor and no right as a fiduciary to a remedy because the relief granted by the District Court only impacts McKee's status as a plan sponsor. Commissioner's Brief at 17-21.  The Commissioner did not advance this argument in the District Court.  *See* Commissioner's Summary Judgment Brief, R.123, PageID# 1927-29; Commissioner's Response to McKee's Motion for Summary Judgment ("Response Brief"), R.134, PageID# 2006-07.

And the argument is wrong on several levels.  McKee has a right to bring this action as a plan sponsor and fiduciary under the Declaratory Judgment Act to protect its rights of ERISA plan design, and it likewise has a right as a fiduciary to bring this action under ERISA, 29 U.S.C. § 1132(a)(3), to prevent state law interference with McKee's obligations to administer the Plan.

1.    **As plan sponsor and fiduciary, McKee has the right to relief under the Declaratory Judgment Act and to enjoin the Commissioner from enforcing state laws that prevent McKee from exercising its ERISA-granted rights to design and administer the Plan.**

22

The Supreme Court has held that ERISA plan sponsors and fiduciaries may bring actions for declaratory and injunctive relief to establish that state statutes are preempted by ERISA. For example, in *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85 (1983), ERISA plan sponsors brought actions in federal court against state agencies and officials, seeking declaratory and injunctive relief premised on a New York law's preemption by ERISA. The Supreme Court held that the state law was preempted insofar as it prohibited practices that were lawful under federal law. *Id*. at 108. The Court also held that federal courts have jurisdiction over actions alleging preemption of state law:

> A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve . . . This Court, of course, frequently has resolved pre-emption disputes in a similar jurisdictional posture.

*Id.* at 96 n. 14 (citing cases).[13]

The Court in *Shaw* referenced *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. California*, 463 U.S. 1 (1983). There the Court held that "[u]nder § 502(a)(3)(B) of ERISA, a participant, beneficiary, or fiduciary of a plan covered by ERISA may bring a declaratory judgment action in federal

---

[13] The Commissioner's attempt to distinguish *Shaw* by arguing that it does not address pre-enforcement relief (Brief at 21) is misleading. The decision does not mention, one way or the other, whether it involves pre-enforcement relief. Obviously, the presence of active enforcement was unimportant to the Court.

court to determine whether the plan's trustees may comply with a state [law]." *Id.,* 463 U.S. at 26-27. The Court also held that "[s]ection 502(a)(3) of ERISA specifically grants trustees of ERISA-covered plans . . . a cause of action for injunctive relief when their rights and duties under ERISA are at issue, and that action is exclusively governed by federal law." *Id.* at 19-20.

The declaratory and injunctive actions recognized in *Shaw* were also used by ERISA plan sponsors and fiduciaries in other Supreme Court cases alleging that state laws are preempted by ERISA. *See, e.g., District of Columbia v. Greater Washington Bd. of Trade,* 506 U.S. 125 (1992) (action by plan sponsor alleging preemption); *N.Y. State Conf. of Blue Cross and Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645 (1995); (action by ERISA plan fiduciaries); *Gobeille v. Liberty Mut. Ins. Co.,* 577 U.S. 312 (2016) (action by sponsor of self-funded plan). These cases demonstrate that an action like McKee's is perfectly acceptable.

The Commissioner's argument that the Declaratory Judgment Act "does not create" a right to bring this action is not only directly contrary to the above authority but also is not supported by the cases cited for the proposition. In *Littler v. Ohio Ass'n of Pub. Sch. Employees,* 88 F.4th 1176 (6th Cir. 2023), the court denied declaratory relief because the plaintiff was unable to establish a violation of the civil rights statute on which the action was based. *Id.* at 1180 n.1. In *Davis v. U.S.,* 499 F.3d 590 (6th Cir. 2007), declaratory relief was unavailable because

24

there was no underlying federal subject matter jurisdiction.  *Id.* at 594.  Here, there

is federal question jurisdiction under 28 U.S.C. § 1331 and, as discussed below, the

state statutes clearly are preempted by ERISA.

> **2.     As a fiduciary, McKee has the right under ERISA § 1132(a)(3) to enjoin the Commissioner from enforcing state laws that interfere with McKee's federal obligations to administer the Plan.**

The Commissioner concedes that McKee is permitted to bring an action

under ERISA § 1132(a)(3) as a fiduciary.  There is no dispute that McKee is a

fiduciary insofar as it administers the Plan, including administration of the

pharmacy network and related provisions of the PDP, such as cost sharing.

This Court and other circuit courts have followed the Supreme Court's lead

in allowing actions by plan administrators and fiduciaries seeking declaratory and

injunctive relief under § 1132(a)(3) to establish that state statutes are preempted by

ERISA.  For example, in *Thiokol Corp. v. Dept. of Treasury,* 987 F.2d 376 (6th

Cir. 1993), ERISA plan fiduciaries brought a federal court action under §

1132(a)(3) seeking declaratory and injunctive relief that a state tax law was

preempted by ERISA.  Relying on *Franchise Tax Board,* this Court held that the

action was properly brought under § 1132(a)(3):

> We find the plaintiffs' claims for injunctive and declaratory relief against defendants are brought under ERISA. Therefore, under *Franchise Tax Board,* the exclusive federal jurisdiction provision of ERISA, 29 U.S.C. §1132(e)(1), applies, and under these circumstances, the Michigan courts lack jurisdiction to decide these ERISA claims . . . Thus, the District Court

25

has jurisdiction over those challenges to Michigan's tax code under ERISA seeking injunctive and declaratory relief.

987 F.2d at 380-81.

Similarly, in *Denny's, Inc. v. Cake,* 364 F.3d 521 (4th Cir. 2004), an ERISA plan administrator and fiduciary sued California officials for declaratory and injunctive relief on the ground that certain provisions of the California Labor Code were preempted by ERISA. The Fourth Circuit rejected the argument that the suit alleging preemption was not an action to "enforce" the provisions of ERISA:

> Section 1132(a)(3)(B) thus permits an ERISA fiduciary to bring an action to 'enforce any provisions of this subchapter.' *Id*. Indisputably, 'this subchapter' refers to subchapter I of Chapter 18 of the United States Code, which codified Title I of ERISA and includes 29 U.S.C. §§ 1001–1191. '[T]his subchapter' thus clearly contains ERISA's preemption provision, 29 U.S.C. § 1144. The plain language of § 1132(a)(3)(B) therefore appears to permit an ERISA fiduciary to bring an action to 'enforce' §1144—a 'provision of this subchapter.'

*Id.* at 524-25. Relying on *Franchise Tax Board,* the Court further held that the fiduciary's action to enjoin the state statute as preempted by ERISA was proper:

> [B]oth the plain language of §1132(a)(3) and the Supreme Court's interpretation of it seem to compel the conclusion that an ERISA fiduciary, like Denny's, could bring the instant action to 'enforce' § 1144 by way of 'an injunction ... against application ... of state regulations that require acts inconsistent with ERISA.'

*Id.* at 525. *See also Sherfel v. Gassman,* 748 F.Supp.2d 776, 781-87 (S.D. Ohio 2010), *aff'd* 768 F.3d 561 (6th Cir. 2014) (ERISA plan sponsors,

26

administrators, and fiduciaries had standing and adequate basis for declaratory and injunctive relief under ERISA and the Declaratory Judgment Act).

The Commissioner's argument that § 1132(a)(3) does not apply because he did not "violate" ERISA (Brief at 18-20) is wrong and also misconstrues the relief available under the statute. The argument is wrong because the Commissioner's expressed intention to enforce the any-willing-provider and anti-steering statutes against self-funded ERISA plans violates McKee's rights as a fiduciary to administer its pharmacy network and the cost sharing provisions that apply to that network, including administration of the McKee Pharmacy. Enforcement of the statutes also interferes with McKee's fiduciary obligation to ensure that pharmacies do not harm participants. This is particularly evident in this case where Thrifty Med's actions were tantamount to fraud.

The Commissioner misconstrues the statute because he ignores the remaining remedy under § 1132(a)(3), *i.e.*, to enforce ERISA and the terms of an ERISA plan. ERISA places certain responsibilities and rights on fiduciaries. Among other things, fiduciaries have the duty to enforce the plan according to its terms. To avail itself of those rights and permit it to carry out its responsibilities, McKee has the express basis under § 1132(a)(3) to enforce ERISA by way of declaratory and injunctive relief to confirm the state statutes are preempted and unenforceable.

27

### 3. The relief granted by the District Court applies to McKee's role as plan sponsor and its role as a fiduciary.

The remedies granted by the District Court are consistent with § 1132(a)(3) and the Declaratory Judgment Act, and apply to McKee's role as both plan sponsor and fiduciary.  The Commissioner is the state official with the responsibility to enforce the any-willing-provider and anti-steering statutes.  Over the protests of McKee and other stakeholders, the Commissioner repeatedly and unequivocally expressed his intention to do so against self-funded ERISA plans.  Declaratory and injunctive relief are available to prevent the Commissioner from enforcing these statutes, to permit McKee as Plan sponsor to exercise its right to design its pharmacy network as it determines best for the Plan and its participants, and to enable McKee as a fiduciary to administer the Plan as designed and to respond to provider conduct that harms the Plan and its participants.

### B. MCKEE ESTABLISHED THE JURISDICTIONAL PREREQUISITES FOR ITS ACTION AGAINST THE COMMISSIONER

Dissatisfied with the Department's enforcement of PC 569, the Tennessee Legislature adopted PC 1070 in 2022, specifically targeting ERISA plans for substantive state regulation.  *See supra* at 11-12; Complaint, R.83, PageID# 1077-78 (¶¶ 44-46).  The Commissioner worked with influential legislators and the Association to close what they viewed as a loophole in the existing laws: ERISA

28

preemption. During their communications, the Commissioner and the legislators specifically noted concerns about McKee's ERISA suit.

The Commissioner and the Department have repeatedly confirmed that the laws McKee challenges *will* be enforced against self-insured ERISA plans, rejecting requests from McKee and other stakeholders that the laws not be enforced against them. For litigation purposes, the Commissioner now advances disingenuous arguments that McKee lacks standing because enforcement is not "certainly impending." Commissioner's Brief at 14, 24. The Commissioner's objective is to overturn the District Court's finding of preemption so enforcement can proceed.

In his Answer, the Commissioner *admitted* that a justiciable controversy existed between the Commissioner and McKee that was ripe for adjudication. Commissioner's Answer, PageID# 1535 (¶55). This admission came just a couple of weeks after the Commissioner's counsel stipulated in open court that McKee's standing would no longer be an issue on any subsequent motion to dismiss or for summary judgment. Hearing Transcript, R.148, PageID# 2270, 2280-81.

The Commissioner's and Association's arguments miss the mark in any event. Standing does not require a "certainly impending" threat of prosecution. Standing only requires that the plaintiff suffer an "injury in fact" which the courts define as "an invasion of a *legally protected interest* which is (a) concrete and

29

particularized, and (b) actual or imminent, not conjectural or hypothetical."
*Crawford v. United States Dep't of Treasury*, 868 F.3d 438, 452 (6th Cir. 2017)
(citation modified).  In a pre-enforcement action, the allegation of future injury
may be established when there is a *credible threat* of prosecution.  *Susan B.
Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014).  When a plaintiff is threatened
by government action, he need not "expose himself to liability before bringing suit
to challenge the basis for the threat[.]"  *MedImmune, Inc. v. Genentech, Inc.*, 549
U.S. 118, 129 (2007).  And as the Supreme Court recently observed in *Diamond
Alternative Energy, LLC v. Env't Prot. Agency*, 145 S. Ct. 2121, 2135 (2025),
when a plaintiff is the "object" of government regulation, there ordinarily is "little
question" that the regulation causes the plaintiff injury and that invalidating the
regulation will redress the injury.

A plaintiff may demonstrate an injury-in-fact by showing that a challenged
law forced him to materially alter his behavior.  *See Christian Healthcare Centers,
Inc. v. Nessel*, 117 F.4th 826, 852–53 (6th Cir. 2024) (conduct in which plaintiff
would otherwise have engaged prohibited by challenged law); *Clements v.
Fashing*, 457 U.S. 957, 962 (1982).  This principle was recently affirmed in *Yoder
v. Bowen*, No. 24-1593, 2025 WL 2170165, at *4–5 (6th Cir. July 31, 2025), which
addressed standing to challenge legislation in a pre-enforcement action.  As here,
the state officials had not *disavowed* enforcement.  In concluding that the plaintiffs

30

had standing, this Court noted that the challenged statute *proscribed the plaintiffs'*

*intended conduct* since the plaintiffs had not operated in Michigan because of the

statutory prohibition at issue.  This Court observed:

> "[A]t the pre-enforcement stage, [Plaintiffs] need not prove conclusively that
> [their] intended course of conduct violates the [statute] but only that it is
> *arguably* proscribed by the statute."

*Id*. at *4 (emphasis original) (quoting *Friends of George's Inc., v. Mulroy*, 108

F.4th 431, 437 (6th Cir. 2024)).

In the instant case, the District Court engaged in a structured, step-by-step

analysis of standing, including standing to bring a pre-enforcement action.  District

Court Decision at *4-*6.  The Court addressed the "three oft-repeated elements" of

standing: injury, causal connection with the defendant's conduct, and

redressability.  *Id*. at *5.  The Court then focused more specifically on the

requirement of injury in a pre-enforcement challenge, stating that the injury-in-fact

requirement is satisfied when the plaintiff alleges "an intention to engage in a

course of conduct arguably affected with a constitutional interest, but proscribed

by a statute, and there exists a credible threat of prosecution thereunder."  *Id*.

(quoting *Susan B. Anthony List*, 573 U.S. at 159).  The District Court then analyzed

the so-called *McKay* factors[14] and concluded that McKee was under a credible

---

[14] *McKay v. Federspiel*, 823 F.3d 862, 869 (6th Cir.  2016).  The McKay factors
are not exhaustive, nor must each be established.  *Online Merchants Guild v.
Cameron*, 995 F.3d 540, 550 (6th Cir. 2021).

31

threat of prosecution. The Court specifically noted the Commissioner's and the Department's repeated statements that the challenged laws would be enforced against ERISA plans. *Id*. at *5.

Finally, the District Court considered whether McKee had shown "an intention to engage in a course of conduct arguably affected with a constitutional interest but proscribed by a statute[.]" *Id*. at *6 (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)). Here the Court addressed the Commissioner's argument that Thrifty Med was no longer seeking reinstatement and that nothing in the record suggested that preventing Thrifty Med from rejoining the Plan's pharmacy network would violate the challenged laws. But the District Court noted that McKee's claims extended beyond its dispute with Thrifty Med and that the challenged laws effectively prevented McKee from incentivizing or disincentivizing participants from using any particular pharmacy. *Id*. (citing T.C.A. §§ 56-7-3120(b), 56-7-3121). The Court concluded that offering participants lower copays at the McKee Pharmacy as compared to other in-network pharmacies was contrary to the Tennessee laws, thus establishing McKee's intent to engage in conduct proscribed by the statutes.

In the proceedings below, McKee advanced the argument adopted by the District Court, discussing Preferred Cherokee's complaint that McKee was in

32

violation of Tennessee law by offering lower copays at the McKee Pharmacy. McKee Summary Judgment Brief, R.119, PageID# 1626-27, 1635; McKee Reply Brief, R.139, PageID# 2140-41.  The Commissioner chose not to address this argument in his Response to McKee's Motion for Summary Judgment and, instead, alleged that McKee's *refusal to readmit Thrifty Med* to the Plan's pharmacy network did not establish an intention to engage in conduct proscribed by statute. Commissioner's Response Brief, R.134, PageID# 2005.  The Commissioner's Reply Brief (R.140) likewise contained no mention of the McKee Pharmacy or the Preferred Cherokee complaint.

The Commissioner now complains about the District Court's reliance on the operation of the McKee Pharmacy and the Preferred Cherokee complaint as part of its analysis of standing.  Commissioner's Brief at 25-28.  McKee says the Commissioner's arguments, not advanced in the District Court, were waived.  *See Jodway v. Orlans*, PC, 759 F. App'x 374, 382 (6th Cir. 2018); *Thurman v. Yellow Freight Sys., Inc.*, 97 F.3d 833, 835 (6th Cir. 1996).  But the arguments lack merit in any event.

The Commissioner first argues that McKee did not offer its operation of the McKee Pharmacy as the "foundation" for its claims in its Complaint. Commissioner's Brief at 23-24.  This disregards the Complaint's specific allegation that T.C.A. § 56-7-3120 is preempted because, among other things, it

33

limits copays that the Plan may require of participants and purports to restrict the ability of the Plan to offer *lower copays and other incentives beneficial to participants*. Complaint, R.83, PageID# 1078 (¶47).

In addition, a pleading need not detail all the facts that a party may rely upon to support its claims, and a court may consider facts developed in discovery and alleged in summary judgment motions. *See, e.g., Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 115 (1979); *Plumbers and Steamfitters Local No. 150 Pension Fund v. Vertex Const. Co., Inc.,* 932 F.2d 1443, 1448 (11th Cir. 1991); *Kline v. Mortgage Electronic Sec. Systems*, 2011 WL 5325521, at *1-2 (S.D. Ohio Nov. 3, 2011). The McKee Pharmacy and Preferred Cherokee complaint were not only advanced by McKee in the summary judgment proceedings but were also subjects of discovery (including McKee's motion to compel discovery of administrative complaints the Commissioner withheld). Motion to Compel Discovery, R.107, PageID# 1275-76, 1285-86; Hearing Transcript, R.148, PageID# 2299-2300 (referring specifically to Preferred Cherokee complaint); McAnally Rule 30(b)(6) Depo., R.119-8, PageID# 1875-1876 (same).

The Commissioner next argues that the Preferred Cherokee complaint was insufficient to establish a "certainly impending threat of prosecution" and makes the erroneous claim that there was nothing in the record to indicate the Commissioner had any interest in enforcing the laws McKee was accused of

34

violating.  Commissioner's Brief at 24-25.  The Commissioner again attempts to impose a higher standard on McKee when the law only requires a *credible threat* of prosecution.  The District Court made a factual determination that such a threat was present.  That determination was fully supported by the evidence below and certainly was not clearly erroneous.

The Commissioner finally argues that "most importantly, the district court failed to appropriately cabin its merits analysis to fit its theory of jurisdiction." Commissioner's Brief at 25.  The Commissioner then constructs an elaborate argument questioning the scope of the District Court's ruling, relying on facts and holdings in cases dramatically different from the instant case.[15]

The Commissioner seems to be saying that because the District Court focused on the lower copays at the McKee Pharmacy for purposes of standing, the Commissioner should only have been enjoined from enforcing that particular aspect of the challenged laws.  The Commissioner makes the same argument in the final section of his brief, alleging that the District Court granted improper relief. Commissioner's Brief at 57-58.  The Commissioner's argument fails.

---

[15] *See, e.g., Ammex Inc. v. Cox*, 351 F.3d 697, 706 (6th Cir. 2003) (case not ripe for decision because additional factual development needed and state Attorney General had withdrawn notice of violation); *Doe v. Lee*, 102 F.4th 330, 341 (6th Cir. 2024) (TBI director could not be enjoined from taking enforcement action not within his authority).

**First**, McKee's challenge focused on two sections of Part 31: T.C.A. §§ 56-7-3120 and 56-7-3121.  Those sections are part of an integrated statutory scheme that purports to regulate copayments offered under the terms of a health plan as well as pharmacy network participation.  *See* statutory analysis *supra* at 7-8, 13-14. The District Court noted the interrelationship of the two statutes, which allows the Commissioner to take action against ERISA plans that engage in "steering" or that give preference to one pharmacy over another, as Preferred Cherokee alleged. District Court Decision at *6.

The District Court correctly determined that McKee had standing to challenge the statutes.  Otherwise, "one portion of a multi-benefit plan would be subject only to state regulation, while other portions would be exclusively within the federal domain . . . The administrative impracticality of permitting mutually exclusive pockets of federal and state jurisdiction within a plan is apparent." *Shaw*, 463 U.S. at 107-08.  *See Gobeille*, 577 U.S. at 323 (state reporting regime intruded on plan administration); *FMC Corp. v. Holliday*, 498 U.S. 52, 60 (1990) (benefit plans must be governed by single set of regulations).

**Second**, as detailed above, the undisputed evidence established standing for reasons that went significantly beyond McKee's operation of the onsite pharmacy. This Court may consider that evidence.  *See, e.g., Gammons v. Adroit Med. Sys., Inc.,* 91 F.4th 820, 825 (6th Cir. 2024) (Court of Appeals "may affirm on any

grounds supported by the record, even if they are different from the grounds the district court relied upon").

The Commissioner and his staff repeatedly confirmed their intent to enforce the challenged laws against ERISA plans, disregarding McKee's claims of preemption. McKee and other plan sponsors were and are suffering actual and ongoing harm by the laws' interference with their rights to determine benefits under their plans, the providers of those benefits, and the copays and other contributions for which plan participants are responsible, and to administer their plans accordingly. *See* McKee Response Brief, R.135, PageID# 2025-27; McKee Reply Brief, R.139, PageID# 2137-41.

In addition, to *avoid* enforcement action, McKee has altered its behavior as the Plan no longer has preferred pharmacies in Tennessee. As in *Yoder*, the record shows McKee's intent, but for the threat of enforcement, to engage in the "course of conduct" the statutes proscribe. McKee is not required to violate the law and subject itself to enforcement action before seeking declaratory relief.

## III. ERISA PREEMPTS THE CHALLENGED STATUTES.

Congress enacted ERISA to provide "a uniform regulatory regime over employee benefit plans." *Aetna Health Inc. v. Davila,* 542 U.S. 200, 208 (2004). ERISA contains one of the broadest preemption provisions in federal law: ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to

any employee benefit plan . . . ."  29 U.S.C. § 1144(a).  The intent of Congress was "to ensure that plans and plan sponsors would be subject to a uniform body of benefits law" and to eliminate the need to tailor plans "to the peculiarities of the law of each jurisdiction."  *Kentucky Ass'n of Health Plans, Inc. v. Nichols*, 227 F.3d 352, 358 (6th Cir. 2000), *aff'd sub nom. Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329 (2003).[16]

## A.   CRITERIA FOR ERISA PREEMPTION

A state law "relates to" an employee benefit plan – and is preempted – if the law *either* has a *connection with* such a plan *or* a *reference to* such a plan.  *See, e.g., Shaw*, 463 U.S. at 96-97; *Nichols,* 227 F.3d at 358 (citing *California Div. of Lab. Standards Enf't v. Dillingham Const., N.A., Inc.*, 519 U.S. 316, 324 (1997)).  In *Rutledge*, the Supreme Court provided guidance on state laws that would and would not be preempted by ERISA.  The state law in *Rutledge* was narrowly focused and required PBMs "to reimburse Arkansas pharmacies at a price equal to or higher than that which the pharmacy paid to buy the drug from a wholesaler."  *Rutledge, 592 U.S.* at 84.  The Court characterized the law as "merely a form of cost regulation" and held that ERISA did not preempt state rate regulations that

---

[16] There certainly is no presumption against preemption under Section 1144 as the Commissioner suggests.  *Pharm. Care Mgmt. Ass'n v. Wehbi*, 18 F.4th 956, 967 (8th Cir. 2021).

merely increased costs for ERISA plans without forcing them to adopt any particular scheme of substantive coverage. *Id*. at 88.

> *Rutledge* also identified the types of laws that *would* be preempted:
>
> ERISA is therefore primarily concerned with pre-empting laws that require providers **to structure benefit plans in particular ways, such as by requiring payment of specific benefits** . . . A state law may also be subject to pre-emption if "acute, albeit indirect, economic effects of the state law force an ERISA plan to adopt a certain scheme of substantive coverage." As a shorthand for these considerations, this Court asks whether a state law ***"governs a central matter of plan administration <u>or</u> interferes with nationally uniform plan administration."*** If it does, it is pre-empted.

*Id*. at 86-87 (emphasis added) (citation modified).

As the District Court concluded, the special interest legislation that McKee challenges – specifically directed at ERISA plans and imposing substantive requirements on the plans' design, structure, benefits and administration – is preempted under *Rutledge*, *Nichols* and other precedent.[17]  Senior officials in the Department, including the Director of PBM Compliance, acknowledged that the challenged laws regulate benefit design and structure.[18]  The Commissioner understood this as well but didn't care. *See supra* at 10-11.

---

[17] *See CIGNA Healthplan of Louisiana, Inc. v. Louisiana ex rel. Ieyoub*, 82 F.3d 642 (5th Cir. 1996), *cert. denied,* 519 U.S. 964 (1996); *Texas Pharmacy Ass'n v. Prudential Ins. Co. of Am.,* 105 F.3d 1035, 1037 (5th Cir. 1997).

[18] The Department was even dismissing administrative complaints on grounds of ERISA preemption – before the Association and legislative leadership intervened. *Supra* at 9-10, 11-12.

### B.     THE CHALLENGED LAWS HAVE A "CONNECTION WITH" ERISA PLANS.

Applying *Rutledge* and relying on this Court's decision in *Nichols*, the District Court held that the challenged laws have an impermissible "connection with" ERISA plans. Although the District Court considered *Nichols* to be binding Sixth Circuit precedent, the Court conducted its own analysis of the effects of the challenged laws on ERISA plans. District Court Decision at *9. Rejecting the Commissioner's argument that any-willing-provider requirements do not require a plan to adopt any particular scheme of substantive coverage, the Court correctly noted that "the scope of an ERISA plan's provider network (in this case a pharmacy network) is a key aspect of plan administration: how the plan structures and designs its benefits." *Id.* (citing *Pharm. Care Mgmt. Ass'n v. Mulready*, 78 F.4th 1183, 1188 (10th Cir. 2023), *cert. denied,* No. 23-1213, 2025 WL 1787716 (U.S. June 30, 2025)).[19] The Court observed that depending on a plan's goals, it may choose to offer participants more or fewer pharmacy options based on any number of factors but that any-willing-provider requirements eliminate this choice – a direct regulation of benefit design structure. *Id*.

---

[19] It is hard to imagine anything that would be more "central" to plan administration than the design of a provider network, which determines how and from whom the participant accesses benefits under the plan and the extent of the participant's cost-sharing obligation.

The District Court then analyzed the "incentive and disincentive" provisions integrated into T.C.A. §§ 56-7-3120(a), (b)(2), and 3121(c), concluding that these provisions combined to "forbid McKee and its PBM from encouraging plan participants to use specific pharmacies through either the carrot of lower copays and other incentives or the stick of higher copays and additional fees." *Id.* As the Court stated, these provisions functionally mandate that ERISA plans charge participants the same copays and/or fees at all pharmacies. The Court noted as an *example* that the laws would prohibit McKee from offering lower copays at the McKee Pharmacy. But the challenged laws have broader application and, for instance, purport to prohibit McKee from requiring a participant "to pay an additional fee, higher copay, higher coinsurance, second copay, second coinsurance, or other penalty when obtaining prescription drugs . . ." T.C.A. § 56-7-3120(a). Participant contributions are governed by the Plan itself. Jolls Dec. R.118-1, PageID# 1590-1601. Under ERISA, state laws that purport to regulate these matters are preempted.[20]

Faced with what the District Court correctly described as binding precedent, the Commissioner is left to argue that *Nichols*' holding that AWP laws are preempted as to self-funded ERISA plans was really just dicta. Commissioner's

---

[20] *See Griffin v. AT&T Servs., Inc.*, No. 1:22-CV-00701-SEG, 2023 WL 3213550, at *6 (N.D. Ga. Mar. 21, 2023), *aff'd* 2023 WL 8852925 (11th Cir. Dec. 21, 2023) (under *Rutledge*, state laws cannot dictate ERISA-governed plan terms).

Brief at 36-38. The Commissioner did not raise this argument in the District Court, contending instead that *Rutledge* abrogated *Nichols*. Commissioner's Response Brief, R.134, PageID# 2012-2013. McKee and the District Court responded to the Commissioner's only argument against *Nichols* (abrogation), concluding that the Commissioner was incorrect. District Court's Decision at *8. The Commissioner waived the "dicta" argument he now advances.

But this Court's ruling in *Nichols* was not "dicta" in any event. The Commissioner himself characterized *Nichols'* preemption ruling as *holding* – which it clearly was. Commissioner's Summary Judgment Brief, R.123, PageID# 1936; Commissioner's Response Brief, R.134, PageID# 2013.

*Nichols'* holding that ERISA preempted the Kentucky AWP laws was the result of deliberate, detailed analysis that was necessary for the Court to reach its ultimate decision that ERISA's saving clause applied when the Kentucky law is applied to insured plans. *See Nichols*, 227 F.3d at 358-63; *Wright v. Spaulding,* 939 F.3d 695, 701-02 (6th Cir. 2019) (discussing what constitutes a holding). Following a comprehensive analysis of both the "reference to" and "connection with" prongs of ERISA preemption, this Court held that any-willing-provider laws "are preempted, *unless* found to be statutes that regulate insurance under the savings clause." *Id*. at 363 (emphasis added). Had the Court not determined the

42

Kentucky laws to be preempted, there would have been no need for the Court to address the applicability of the saving clause.

In addition to *Nichols*, the District Court cited the Tenth Circuit's decision in *Mulready* for the proposition that any-willing-provider statutes and laws regulating copays dictate plan design, structure and content and are therefore preempted. Relying on *Nichols* and the Fifth Circuit's decision in *CIGNA Healthplan*, the Tenth Circuit held that the Oklahoma law in *Mulready* was preempted because it mandated the structure and design of ERISA plans and the benefits provided thereunder. Citing *Rutledge* and *Shaw*, the Court concluded that the Oklahoma law *required* providers to structure benefit plans in particular ways and *prohibited* them from structuring plans in other ways.

> ERISA preempts these provisions because a pharmacy network's scope (which pharmacies are included) and differentiation (under what cost-sharing arrangements those pharmacies participate in the network), are **key benefit designs for an ERISA plan**.

*Mulready*, 78 F.4th at 1198 (emphasis added). Oklahoma's network restrictions thus governed a central matter of plan administration and had an impermissible connection with ERISA plans. *Id*. (citing *Rutledge*, 592 U.S. at 87).

The Oklahoma Insurance Commissioner petitioned the Supreme Court for a writ of certiorari, and the Court sought the views of the United States. In its brief filed May 27, 2025, the United States agreed with the Tenth Circuit that ERISA preempted the Oklahoma laws at issue in *Mulready*, including the any-willing-

43

provider requirement and the prohibition against discounts in cost-sharing and copays. Citing the requirements for "connection with" preemption, the United States agreed that the challenged provisions governed central matters of plan administration, interfered with nationally uniform plan administration, and interfered with the rights of providers to design and structure their plans. Brief of the United States as Amicus Curiae, S.Ct. No. 23-1213, 2025 WL 1533452 at *12-*13 (May 27, 2025). The United States noted, for example, that the discount prohibition would interfere with a plan's right to use lower cost-sharing to incentivize participants to select a mail-order pharmacy option and that the AWP provision would require a plan to accept into preferred status any pharmacy that met standard terms and conditions, again "undermining the plan's ability to give preferential treatment to a mail-order option." *Id*. at *13.

The United States rejected Oklahoma's argument that the challenged laws were not preempted because they applied to PBMs and did not directly regulate ERISA plans. The government stated that Supreme Court precedent made clear that "a state law may be impermissibly related to ERISA plans even when the law regulates only third parties with whom the plans contract." *Id.* A few weeks after the government filed its brief in *Mulready*, the Supreme Court similarly confirmed that a party may challenge government regulations that, though directly applicable

44

to one type of business, "'may be likely' to cause injuries to other linked businesses." *Diamond Alternative Energy,* 145 S. Ct. at 2136.

The Supreme Court denied Oklahoma's petition for certiorari. *Mulready v. Pharm. Care Mgmt. Ass'n*, No. 23-1213, 2025 WL 1787716, at *1 (U.S. June 30, 2025).

## C.  THE CHALLENGED LAWS MAKE REFERENCE TO AND REGULATE ERISA PLANS.

The District Court found it unnecessary to decide whether the laws also had a "reference to" ERISA plans or were subject to conflict/obstacle preemption. District Court Decision at *8.  This Court may address those questions, and the answer is yes.

Displeased that plan sponsors and PBMs were asserting their rights under ERISA, the Legislature in PC 1070 made a policy choice to regulate ERISA plans specifically and by name. The Legislature added a new section to Part 31 which reads:

> Notwithstanding another law, this part applies to plans governed by the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. § 1001 *et seq*.).

PC 1070, R.135-2, PageID# 2056 (Section 7).[21]

---

[21] The new section is codified at T.C.A. § 56-7-3122.

PC 1070 also added ERISA plans to the definitions of "covered entity" and "pharmacy benefit manager" that would be subject to Part 31.  *Id.*, Page ID # 2055 (Sections 3-4).[22]  The definition of "covered entity" lists 13 types of entities, but ERISA plans were the *only* entity added and targeted by PC 1070.[23]  The testimony of the Commissioner and related email communications, confirm that the intent of the legislation was to regulate ERISA plans and that McKee's assertion of ERISA preemption *in this lawsuit* was part of the equation.  *See Welty v. Dunaway*, 749 F. Supp. 3d 882, 903 (M.D. Tenn. 2024) (relevance of statements by bill's sponsor and advocate); *Doe v. Horne*, 737 F. Supp. 3d 758, 764 (D. Ariz. 2024) (emails between legislators); *Bethune-Hill v. Virginia State Bd. of Elections*, 114 F. Supp. 3d 323, 339 (E.D. Va. 2015) (opinions and beliefs of legislators).

Nevertheless, the Commissioner argues that the law really does *not* target ERISA plans.  Commissioner's Brief at 29-31.  The Commissioner says that an impermissible "reference to" an ERISA plan only exists if the law "acts immediately and exclusively upon ERISA plans" or "the existence of ERISA plans is essential to the law's operation."  *See Dillingham,* 519 U.S. at 324-25.

The Commissioner ignores the full text of *Dillingham* as well as this Court's analysis of "reference to" preemption in *Thiokol Corp. v. Roberts*, 76 F.3d 751,

---

[22] These sections are codified at T.C.A. § 56-7-3102(1) and (5).
[23] Compare definition of "covered entity" in Public Chapters 1070 with that included in the previous law, 2007 Public Chapter 224 (*see* Statutory Addendum).

759-60 (6th Cir. 1996).  The supposed "immediately and exclusively" requirement has been lifted from the following paragraph of *Dillingham*:

> Under the [reference to] inquiry, we have held pre-empted a law that "impos[ed] requirements by reference to [ERISA] covered programs," *Greater Washington Bd. of Trade, supra,* at 130–131, 113 S.Ct., at 584; a law that specifically exempted ERISA plans from an otherwise generally applicable garnishment provision, *Mackey v. Lanier Collection Agency & Service, Inc.,* 486 U.S. 825, 828, n. 2, 829–830 (1988); and a common-law cause of action premised on the existence of an ERISA plan, *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 140 (1990). Where a State's law acts immediately and exclusively upon ERISA plans, as in *Mackey,* or where the existence of ERISA plans is essential to the law's operation, as in *Greater Washington Bd. of Trade* and *Ingersoll–Rand,* that "reference" will result in pre-emption.

*Dillingham*, 519 U.S. at 324-25 (internal citations shortened).  As can be seen, *Dillingham* provided examples of the types of laws the Court had determined to be subject to "reference to" preemption, including laws that *impose requirements* on ERISA-covered programs *or* that act "immediately and exclusively" on ERISA plans (*e.g.*, by exempting them).

In *Thiokol*, this Court emphasized the importance of the *effect* of a law on ERISA plans, stating:

> On several occasions since our decision in *Shaw*, we have reaffirmed this rule [that a law relates to a plan if it has a connection with or reference to such a plan], concluding that state laws which make "reference to" ERISA plans are laws that "relate to" those plans within the meaning of § 514(a). In fact, we have virtually taken it for granted that state laws which are "specifically designed to affect employee benefit plans" are pre-empted under § 514(a).

47

*Thiokol*, 76 F.3d at 759 (citation omitted).  And as this Court stated in *Nichols*, preemption will result when a reference to an ERISA plan is combined with an effect on the plan.  *Nichols*, 227 F.3d at 360.

Such is clearly the case with PC 1070 which not only targeted and named ERISA plans but also subjected them to the requirements and prohibitions discussed above.[24]

### D.    THE CHALLENGED LAWS ARE ALSO SUBJECT TO OBSTACLE PREEMPTION.

In a short section of his brief (at 41-42), the Commissioner attempts to address McKee's argument below that the challenged laws are subject to obstacle preemption.  The Commissioner begins by claiming that McKee's argument is too "skeletal" to be considered.  In fact, McKee advanced its argument in some detail in the District Court, discussing Supreme Court and Sixth Circuit precedent. McKee Summary Judgment Brief, R.119, PageID# 1636-1637; McKee Reply Brief, R.139, PageID# 2150-2152.

The Commissioner offers nothing more than generalities from cases not involving ERISA preemption.  The Commissioner disregards Supreme Court and Sixth Circuit precedent holding that conflict or obstacle preemption may apply in

---

[24] A case the Commissioner repeatedly cites, *Washington Phys. Serv. Ass'n. v. Gregoire,* 147 F.3d 1039, 1044 (9th Cir. 1998), supports "reference to" preemption where a state law expressly refers to and operates directly on ERISA plans, as in this case.

addition to the express statutory preemption of state law created by ERISA itself.

*See Freightliner Corp.* v. *Myrick*, 514 U.S. 280, 287 (rejecting as "without merit"

argument that implied and express preemption cannot coexist); *Sherfel v. Newson*,

768 F.3d 561, 564 (6th Cir. 2014) (ERISA both expressly and impliedly preempts

state laws that obstruct its purposes and objectives; Wisconsin law imposed

obligations ERISA did not and interfered with nationally uniform plan

administration).[25]  As was the case with the Wisconsin law in *Sherfel*, the

challenged Tennessee laws impose obligations on McKee that are contrary to the

terms of its Plan and interfere with nationally uniform plan administration,

obstructing ERISA's objectives.  *See Sherfel*, 768 F.3d at 568.  Accordingly, they

are preempted.

## IV.   THE COMMISSIONER'S SAVING CLAUSE ARGUMENT HAS NO BASIS IN LAW OR FACT AND WAS WAIVED.

### A.   THE INSURANCE SAVING CLAUSE ARGUMENT WAS NEVER ASSERTED BELOW AND WAS WAIVED.

As discussed *supra* at 4, the Commissioner never pled, argued or even

suggested in the proceedings below that the challenged laws were exempted from

preemption by ERISA's "saving clause," 29 U.S.C. § 1144(b)(2)(A).  The

Commissioner likewise never argued that it was somehow McKee's burden to

---

[25] Of course, because of ERISA's *express* preemption provision, no conflict with federal law is required for preemption under ERISA.  *Shaw*, 463 U.S. at 98.

establish that the saving clause did *not* apply. The applicability of the clause was never an issue. As a result, neither McKee nor the District Court had a reason or opportunity to address it.

The saving clause is an exception to the general rule that state laws that relate to ERISA plans are preempted. As such, the applicability of the clause was an affirmative defense. *See Mulready*, 78 F.4th at 1204. As an affirmative defense or "avoidance,"[26] the clause should have been pled in the Commissioner's Answer. It was not. Commissioner's Answer, R.117.

Whether an affirmative defense or an argument, the Commissioner waived any entitlement to rely on the saving clause by not raising the issue below. *See Mulready*, 78 F4th at 1204-05 (saving clause defense waived when not pled in answer or raised in motion for summary judgment); *Jodway,* 759 F. App'x at 382; *Thurman*, 97 F.3d at 835; Fed. R. Civ. P. 8(b)(1) (party must state its defenses to each claim asserted against it). Sound policy goals supporting the rule of waiver include the facilitation of appellate review by having the district court first consider the issue and ensuring fairness to litigants by preventing surprise issues on appeal. *Scottsdale Ins.*, 513 F.3d at 552.

Although the Court has the discretion in exceptional circumstances to consider a matter that is raised for the first time on appeal, this Court has rarely

---

[26] Fed. R. Civ. P. 8(c)(1).

50

done so and has, instead, has "generally focused on whether the issue was properly raised before the district court." *Id.* at 552-53. The Commissioner made zero effort to do so.

## B.    THE INSURANCE SAVING CLAUSE ARGUMENT IS MERITLESS.

The argument that the any-willing-provider and anti-steering statutes are exempt from preemption as state laws that regulate insurance[27] is wrong on several fronts: (a) the argument ignores ERISA's deemer clause which expressly removes self-funded plans from state insurance regulation, even when the regulation only indirectly impacts self-funded plans; (b) the argument wrongly assumes that McKee was not involved in the design and administration of the plan's pharmacy network, directly contradicting the undisputed facts; and (c) the argument ignores the fact that both state statutes expressly apply not only to PBMs, but also to self-funded ERISA plans, even going so far as defining a "PBM" to include ERISA plans.

### 1.    Background of ERISA's Saving Clause and Deemer Clause.

ERISA's preemption statute consists of three parts: (a) the preemption clause providing that all state laws that "relate to" ERISA plans are preempted by federal law, 29 U.S.C. § 1144(a); (b) the saving clause which exempts state laws

---

[27] Commissioner's Brief at 43-50; Amici's Brief at 31-33.

that regulate insurance from preemption, 29 U.S.C. §1144(b)(2)(A); and (c) the deemer clause, which prohibits state insurance laws from being applied to self-funded (non-insured) ERISA plans, 29 U.S.C. § 1144(b)(2)(B).[28]

The Supreme Court explained the interaction of these provisions as follows:

> We read the deemer clause to exempt self-funded ERISA plans from state laws that "regulat[e] insurance" within the meaning of the saving clause. By forbidding States to deem employee benefit plans "to be an insurance company or other insurer … or to be engaged in the business of insurance," the deemer clause relieves plans from state laws "purporting to regulate insurance." As a result, self-funded ERISA plans are exempt from state regulation insofar as that regulation "relate[s] to" the plans.

*FMC Corp. v. Holliday,* 498 U.S. 52, 61 (1990).

### 2. The Saving Clause Argument Ignores ERISA's Deemer Clause.

There is no dispute that McKee's health plan is self-funded, so McKee can rely on the deemer clause to avoid state laws that regulate insurance.  Like most self-funded health plans, the McKee Plan must rely on service providers such as PBMs (for pharmacy benefits) and third-party administrators ("TPAs") (providing claim processing and related services).  The thrust of the Commissioner and his amici's argument is that, if a state law only applies to the service providers and only indirectly affects self-funded ERISA plans, the law regulates insurance and is

---

[28] The Commissioner's argument assumes that the challenged state laws "relate to" ERISA plans and are therefore subject to ERISA's preemption clause, 29 U.S.C. §1144(a), because preemption is the only reason one would need to consider whether an exemption applies.

preserved from preemption by the saving clause. Commissioner's Brief at 44-45; Amici's Brief at 32-33. The argument is contrary to Supreme Court and circuit court precedent.

In *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724 (1985), the Supreme Court held that a state health insurance mandated-benefit-law was exempt from preemption because the law regulated insurance.  The Court acknowledged that ERISA plans that purchase insurance are indirectly regulated by the laws that apply to their insurance policy.  However, the Court also noted that under the deemer clause, such laws are still preempted as applied to *non-insured* ERISA plans.  *Id*. at 735 n. 14.

Similarly, in *Rush Prudential HMO, Inc., v. Moran*, 536 U.S. 355 (2002), an HMO sought a declaration that a state law was preempted by ERISA where the state law required HMOs to provide independent medical review for certain health benefit denials.  As applied to HMOs, the Court concluded that the state law was "saved" from preemption as a state law that regulates insurance. However, as in *Met Life,* the Court commented on the inapplicability of the state law to self-funded plans:

> ERISA's "deemer" clause provides an exception to its saving clause that forbids States from regulating self-funded plans as insurers . . . Therefore, Illinois' Act would not be "saved" as an insurance law to the extent is applied to self-funded plans.

*Id*. at 372 n. 6.

53

The primary focus of the Commissioner's and his amici's saving clause argument seems to be the injunction as it applies to McKee's PBM rather than the injunction applied to McKee's self-insured Plan. The Commissioner and his amici appear to argue that McKee's *PBM* is essentially an insurance provider and that state regulation of the PBM is therefore permitted. Commissioner's Brief at 43-47; Amici's Brief at 32-33.

But this argument fails, because the challenged laws' regulation of McKee's PBM functions as a regulation of the McKee Plan. The Supreme Court has recognized that the deemer clause forbids both direct and indirect state regulation of self-funded plans. For example, in *Met Life,* where the Court held that a state mandated benefit law was saved from preemption as applied to insurance policies used to fund benefits in ERISA plans, the Court noted:

> We are aware that our decision results in a distinction between insured and uninsured plans, leaving the former open to indirect regulation while the latter are not. By so doing we merely give life to a distinction created by Congress in the "deemer clause," a distinction Congress is aware of and one it has chosen not to alter.

471 U.S. at 747.

Federal circuit courts have followed this decades-old line of precedent distinguishing between indirect state regulation of *insured* plans (permitted under the saving clause) and indirect regulation of *self-funded* plans (prohibited by the deemer clause). In *Nichols,* this Court held that a state any-willing-provider statute

54

was saved from preemption as applied to insured ERISA plans, *but would still be preempted as to self-funded ERISA plans* under the deemer clause, both as the laws apply to the plan itself and to its TPA:

> [T]he Kentucky statutes . . . could not be enforced, in our opinion, against the employer who has a self-insured ERISA plan *nor against the administrator of such a plan*, even if the administrator is an entity, such as an HMO, which would be subject to the statute if it were acting not as a mere administrator but as an insurer of its own plan.

*Nichols,* 227 F.3d at 366 (emphasis added).  *See also America's Health Insurance Plans v. Hudgens*, 742 F.3d 1319, 1333 n.18 (11th Cir. 2014) (TPAs act pursuant to underlying self-funded ERISA plans); *Prudential Ins. Co. of Am. v. Nat'l Park Medical Center*, 413 F.3d 897, 912 (8th Cir. 2005) (law indirectly applicable to self-funded plans through regulation of TPA's provider networks preempted under deemer clause); *Am. Med. Sec. v. Bartlett*, 111 F.3d 358, 360 (4th Cir. 1997) (deemer clause applicable where TPA was defendant).

This same reasoning was applied more recently by courts reviewing state laws purportedly aimed at PBMs.  For example, in *Mulready,* the Court held that "[b]ecause a plan's choice between self-administering its benefits and using a PBM 'is in reality no choice at all,' regulating PBMs 'function[s] as a regulation of an ERISA plan itself.'"  78 F.4th at 1196; *see Wehbi,* 18 F.4th at 966-67 (state laws

55

do not escape preemption merely because they regulate PBMs); *PCMA v. District of Columbia,* 613 F.3d 179, 188 (D.C. Cir. 2010) (same).[29]

### 3. The Saving Clause Argument Wrongly Assumes that McKee was Not Involved in the Design and Administration of the Pharmacy Network.

Aside from being legally incorrect, the saving clause argument is based on an inaccurate factual premise. The Commissioner's claims that McKee was not involved in the creation or administration of its pharmacy network are untrue and contrary to the District Court's factual findings. *See, e.g.,* Commissioner's Brief at 5-6, 50, 51.

The undisputed evidence is that McKee was actively involved in the design and administration of its pharmacy network. *See* discussion *supra* at 4-5; Jolls Dec., R.118-1, PageID# 1544-1546; Pellington Dec., R.139-1, PageID# 2157. The Commissioner presented no evidence to dispute these facts. The District Court made a factual determination that McKee designed the structure of the Plan's benefits and the Plan's pharmacy network. District Court Decision at *1. That factual determination is supported by the undisputed record and certainly was not erroneous.

---

[29] *Gregoire,* cited by the Commissioner, proves the inapplicability of state insurance laws to self-funded plans. The court held that a state mandated provider law was inapplicable to self-funded plans, so a sponsor "could structure its benefits in any way it chose." 147 F.3d at 1043.

### 4. The Saving Clause Argument Ignores the Fact that the Statutes Expressly Apply to Self-Funded Plans.

The statutes themselves contradict the Commissioner's and his amici's argument that the laws permissibly regulate PBMs as quasi-insurers and just indirectly apply to self-funded plans. Commissioner's Brief at 47-49; Amici's Brief at 31.[30] Tennessee decided to apply the laws explicitly to ERISA plans and even included ERISA plans in *the definition of a PBM*. *See* T.C.A. §§ 56-7-3102(1)(A) and (5); 56-7-3122.

According to the Tennessee statutes, a self-funded ERISA plan *is* a PBM for purposes of the any-willing-provider and anti-steering statutes. This is an attempt at direct regulation of self-funded ERISA plans and is not limited to indirect regulation as the Commissioner and his amici assert.[31]

## V. THE DISTRICT COURT GRANTED APPROPRIATE RELIEF

The Commissioner finally argues that the District Court granted improper relief. The Commissioner is incorrect, and there was no abuse of discretion in the equitable relief granted.

---

[30] Amici make a similar argument in addressing "connection with" preemption. Amici's Brief at 19-25.

[31] The state law in *PCMA v. Rowe,* 429 F.3d 294, 299 (1st Cir. 2005), relied on by the Commissioner and his amici, required PBMs to disclose financial information to health benefit plans. It placed no obligation on plans whatsoever, unlike the Tennessee laws that expressly apply to ERISA plans.

The Commissioner's first argument appears to be that the Court lacked authority to issue a declaratory judgment that the challenged laws were preempted as applied to all self-funded ERISA plans. Commissioner's Brief at 54-56. The statutes themselves were drafted to apply to all ERISA plans. The Commissioner doesn't claim that the preemption analysis would be different for some self-funded ERISA plans versus others, and the deemer clause applies to all. The Commissioner's argument ignores Supreme Court and circuit court precedent invalidating laws as unconstitutional and/or preempted. *See Gobeille,* 577 U.S. at 326 (Vermont statute invalidated); *Mulready*, 78 F.4th at 1205, 1209 (state laws preempted as to ERISA plans).

The Commissioner's argument that the District Court should not have enjoined the Commissioner from enforcing the laws against McKee's *PBM* is addressed *supra* at 54-56. The argument is also based on an overly broad reading of the injunction. The District Court did not enjoin the Commissioner from enforcing the laws against PBMs generally. Rather, it enjoined enforcement against *McKee's* PBM only "for actions the PBM takes on the Health Plan's behalf." District Court Decision at *10. The narrow focus of the injunction is entirely consistent with the authoritative case law discussed above and recognizes

that application of the preempted Tennessee laws to McKee's PBM would function as an impermissible regulation of the Plan itself.[32]

## CONCLUSION

The District Court's decision should be affirmed.

Respectfully submitted,

CHAMBLISS, BAHNER & STOPHEL, P.C.

By:   *s/William H. Pickering*
    William H. Pickering (TN BPR #006883)
    Peter A. Newman (TN BPR #040524)
Liberty Tower – Suite 1700
605 Chestnut Street
Chattanooga, TN  37450
Telephone: (423) 756-3000
Email: wpickering@chamblisslaw.com
        pnewman@chamblisslaw.com

*Attorneys for Plaintiff-Appellee*

OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.
Mark E. Schmidtke
56 S. Washington Street, Suite 302
Valparaiso, IN 46383
Telephone: (219) 242-8668
Email: Mark.schmidtke@ogletree.com

*Attorneys for Plaintiff-Appellee*

---

[32] The Commissioner's argument that the relief granted should have been "cabined" to the McKee Pharmacy is addressed and refuted *supra* at 35-37.

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

The undersigned hereby certifies as follows:

1.      This brief complies with the type-volume limitations of Fed. R. App. P 32(a)(7)(B) because this brief contains 12,833 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Sixth Circuit Rule 32(b)(1).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in size 14-point Times New Roman.

This 29th day of August, 2025.

CHAMBLISS, BAHNER & STOPHEL, P.C.

By:    *s/William H. Pickering*
       Counsel for Plaintiff-Appellee,
       McKee Foods Corporation

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of August, 2025, a copy of the foregoing Brief of Plaintiff-Appellee was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties will be served by regular U.S. mail.  Parties may access this filing through the Court's electronic filing system.

CHAMBLISS, BAHNER & STOPHEL, P.C.

By: *s/William H. Pickering*
Counsel for Plaintiff-Appellee,
McKee Foods Corporation

## ADDENDUM: PLAINTIFF-APPELLEE'S DESIGNATION OF RELEVANT DOCUMENTS

Plaintiff-Appellee McKee Foods Corporation, pursuant to Sixth Circuit

Rules 28(b)(1)(A)(i) and 30(g)(1), designates the following filings in the District

Court's record as relevant documents:

*McKee Foods Corporation v. BFP Inc. and Carter Lawrence, in his official capacity as Commissioner of the Tennessee Department of Commerce and Insurance*

**Case No. 1:21-cv-00279 (E.D. Tenn.)**

| Date Filed | Record Entry No. | Description | PageID# Range |
|---|---|---|---|
| 02/22/2022 | R.21 | State of Tennessee's Motion to Intervene | 93-95 |
| 03/08/2022 | R.26 | Order (granting Motion to Intervene) | 103 |
| 05/23/2022 | R.35 | McKee's Motion for Summary Judgment with attached Exhibits | 173-253 |
| 05/23/2022 | R.36 | Brief in Support of McKee's Motion for Summary Judgment with attached Exhibits | 254-324 |
| 11/18/2022 | R.62 | McKee's Supplemental Brief in Opposition to Thrifty Med's Motion to Dismiss with attached Exhibits | 646-717 |
| 05/14/2024 | R.78 | McKee's Motion for Leave to Amend Complaint with attached Exhibits | 902-954 |
| 05/14/2024 | R.79 | Memorandum in Support of McKee's Motion for Leave to Amend Complaint | 955-960 |
| 05/28/2024 | R.80 | State of Tennessee's Response in Opposition to McKee's Motion for Leave to Amend Complaint | 961-968 |

| Date Filed | Record Entry No. | Description | PageID# Range |
|---|---|---|---|
| 06/04/2024 | R.81 | Reply in Support of McKee's Motion for Leave to Amend Complaint with attached Exhibits | 969-1050 |
| 06/12/2024 | R.82 | Order (granting Motion for Leave to Amend Complaint) | 1051-1065 |
| 06/14/2024 | R.83 | McKee's First Amended Complaint with attached Exhibit | 1066-1114 |
| 07/12/2024 | R.95 | State Defendants' Motion to Dismiss and Supporting Memorandum | 1159-1173 |
| 08/23/2024 | R.101 | McKee's Brief in Opposition to State Defendants' Motion to Dismiss with attached Exhibits | 1208-1251 |
| 08/30/2024 | R.102 | State Defendants' Reply in Support of Motion to Dismiss | 1252-1259 |
| 10/16/2024 | R.107 | McKee's Motion to Compel Discovery with attached Exhibits | 1273-1321 |
| 11/07/2024 | R.114 | Order (on McKee's Motion to Compel Discovery) | 1508-1513 |
| 11/12/2024 | R.115 | Memorandum Opinion and Order (on State Defendants' Motion to Dismiss) | 1514-1524 |
| 11/26/2024 | R.117 | Commissioner's Answer to First Amended Complaint | 1526-1537 |
| 12/31/2024 | R.118 | McKee's Motion for Summary Judgment with attached Exhibit | 1538-1610 |
| 12/31/2024 | R.119 | Brief in Support of McKee's Motion for Summary Judgment with attached Exhibits | 1611-1886 |
| 12/31/2024 | R.120 | Thrifty Med's Motion to Dismiss (with Declarations and Stipulations of Greg and Julie Bohannon) | 1887-1894 |
| 12/31/2024 | R.122 | Commissioner's Motion for Summary Judgment with attached Declaration | 1911-1915 |

| Date Filed | Record Entry No. | Description | PageID# Range |
|---|---|---|---|
| 12/31/2024 | R.123 | Memorandum in Support of Commissioner's Motion Summary Judgment | 1916-1939 |
| 01/21/2025 | R.134 | Commissioner's Response to McKee's Motion for Summary Judgment | 2003-2019 |
| 01/21/2025 | R.135 | McKee's Brief in Opposition to Commissioner's Motion for Summary Judgment with attached Exhibits | 2020-2062 |
| 01/28/2025 | R.139 | Reply in Support of McKee's Motion for Summary Judgment with attached Exhibit | 2134–2173 |
| 01/28/2025 | R.140 | Commissioner's Reply in Support of Motion for Summary Judgment | 2174-2185 |
| 03/31/2025 | R.142 | Memorandum Opinion and Order | 2203–2232 |
| 03/31/2025 | R.143 | Judgment | 2233 |
| 04/30/2025 | R.145 | Commissioner's Notice of Appeal | 2255-2256 |
| 05/22/2025 | R.148 | Transcript of Hearing | 2262-2338 |

## <u>STATUTORY ADDENDUM (FEDERAL RULE OF APPELLATE PROCEDURE 28(f))</u>

## PERTINENT SECTIONS OF TENNESSEE CODE ANNOTATED AND RELEVANT PUBLIC CHAPTERS

## TABLE OF CONTENTS

§ 56-7-2359. Pharmacy and pharmacy access ........................................................1

§ 56-7-3102. Definitions ........................................................................................3

§ 56-7-3120 Actions interfering with covered persons' choice of contracted pharmacy or provider prohibited ..........................................................................5

§ 56-7-3121 Pharmacy Networks ...........................................................................6

§ 56-7-3122 Part application to ERISA plans.........................................................8

§ 56-7-3209 Part application to ERISA plans .........................................................9

2021 Tennessee Laws Pub. Ch. 569 (H.B. 1398).................................................10

2022 Tennessee Laws Pub. Ch. 1070 (H.B. 2661)...............................................16

2007 Tennessee Laws Pub. Ch. 224 (S.B. 1112)..................................................24

T.C.A. § 56-7-2359

§ 56-7-2359. Pharmacy and pharmacy access

Effective: July 10, 2016

(a) No health insurance issuer and no managed health insurance issuer may:

(1) Deny any licensed pharmacy or licensed pharmacist the right to participate as a participating provider in any policy, contract or plan on the same terms and conditions as are offered to any other provider of pharmacy services under the policy, contract or plan; provided, that nothing in this subdivision (a)(1) shall prohibit a managed health insurance issuer or health insurance issuer from establishing rates or fees that may be higher in nonurban areas, or in specific instances where a managed health insurance issuer or health insurance issuer determines it necessary to contract with a particular provider in order to meet network adequacy standards or patient care needs; and

(2) Prevent any person who is a party to or beneficiary of any policy, contract or plan from selecting a licensed pharmacy of the person's choice to furnish the pharmaceutical services offered under any contract, policy or plan; provided, that the pharmacy is a participating provider under the same terms and conditions of the contract, policy or plan as those offered any other provider of pharmacy services.

(b) Notwithstanding any provision of this chapter to the contrary, a health insurance issuer or managed health insurance issuer may restrict an abusive or heavy utilizer of pharmacy services to a single pharmacy provider for nonemergency services, so long as the individual to be restricted has been afforded the opportunity to participate in the process of selection of the pharmacy to be used, or has been given the right to change the pharmacy to be used to another participating provider of pharmacy services prior to the restriction becoming effective. After a restriction is effective, the individual so restricted shall have the right to change a pharmacy assignment based on geographic changes in residence or if the member's needs cannot be met by the currently assigned pharmacy provider.

(c) If a managed health insurance issuer or health insurance issuer revises its drug formulary to remove a drug from a previously approved formulary, the health insurance issuer or managed health insurance issuer shall allow a subscriber or enrollee an opportunity to file a grievance relative to the decision to remove the drug. The grievance must be filed within sixty (60) days after notification to the provider that the drug is being removed. If the grievance is filed with a managed health insurance issuer or health insurance issuer within ten (10) days after the subscriber

1

or enrollee knows or should have known that the drug is being removed, the subscriber or enrollee may continue to receive the drug that is being removed from the formulary until the managed health insurance issuer or health insurance issuer completes the grievance process. This subsection (c) shall not apply to any drug removed from a previously approved formulary when the reason for the removal is due to patient care concerns or other potentially detrimental effects of the drug. Nothing contained in this section shall be construed or interpreted as applying to the TennCare programs administered pursuant to the waivers approved by the federal department of health and human services.

(d) As used in this section, "managed health insurance issuer" has the same meaning as defined in § 56-32-128(a).

(e) Each health insurance issuer or managed health insurance issuer shall apply the same coinsurance, co-payment, deductible and quantity limit factors within the same employee group and other plan-sponsored groups to all drug prescriptions filled by any licensed pharmacy provider, whether by a retail provider or a mail service provider; provided, that all pharmacy providers comply with the same terms and conditions. Nothing in this section shall be construed to prohibit the health insurance issuer or managed health insurance issuer from applying different co-insurance, co-payment, and deductible factors within the same employer group and other plan-sponsored groups between generic and brand-name drugs nor prohibit an employer or other plan-sponsored group from offering multiple options or choices of health insurance benefit plans, including, but not limited to, cafeteria benefit plans.

**Credits**
1998 Pub.Acts, c. 1033, § 9, eff. July 1, 1998; 2001 Pub.Acts, c. 236, §§ 2 to 8, eff. July 1, 2001.

2

T.C.A. § 56-7-3102

§ 56-7-3102. Definitions

Effective: January 1, 2023

As used in this part, unless the context otherwise requires:

(1) "Covered entity":

(A) Means an individual or entity that provides health coverage to covered individuals who are employed or reside in this state, and includes, but is not limited to:

(i) A health insurance issuer;

(ii) A managed health insurance issuer, as defined in § 56-32-128(a);

(iii) A nonprofit hospital;

(iv) A medication service organization;

(v) An insurer;

(vi) A health coverage plan;

(vii) A health maintenance organization licensed to practice pursuant to this title;

(viii) A health program administered by this state or its political subdivisions, including the TennCare programs administered pursuant to the waivers approved by the United States department of health and human services;

(ix) A nonprofit insurance company;

(x) A prepaid plan;

(xi) A self-insured entity;

(xii) Plans governed by the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. § 1001 et seq.); and

(xiii) An employer, labor union, or other group of persons organized in this state; and

(B) Does not include:

3

(i) A health plan that provides coverage only for accidental injury, specified disease, hospital indemnity, medicare supplement, disability income, or other long-term care; or

(ii) A plan subject to regulation under medicare part D;

\*          \*          \*          \*          \*          \*          \*

(5) "Pharmacy benefits manager" means a person, business or other entity and any wholly or partially owned subsidiary of the entity, that administers the medication and/or device portion of pharmacy benefits coverage provided by a covered entity. "Pharmacy benefits manager" includes, but is not limited to, a health insurance issuer, managed health insurance issuer as defined in § 56-32-128(a), nonprofit hospital, medication service organization, insurer, health coverage plan, health maintenance organization licensed to practice pursuant to this title, a health program administered by the state or its political subdivisions, including the TennCare programs administered pursuant to the waivers approved by the United States department of health and human services, nonprofit insurance companies, prepaid plans, self-insured entities, plans governed by the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. § 1001 et seq.), and all other corporations, entities or persons acting for a pharmacy benefits manager in a contractual or employment relationship in the performance of pharmacy benefits management for a covered entity and includes, but is not limited to, a mail order pharmacy; and

\*          \*          \*          \*          \*          \*          \*

**Credits**
2007 Pub.Acts, c. 224, § 1, eff. July 1, 2007; 2014 Pub.Acts, c. 857, § 1, eff. Jan. 1, 2015; 2016 Pub.Acts, c. 631, § 1, eff. March 23, 2016; 2022 Pub.Acts, c. 1070, §§ 3, 4, eff. Jan. 1, 2023.

4

T.C.A. § 56-7-3120

§ 56-7-3120. Actions interfering with covered persons' choice of contracted pharmacy or provider prohibited

Effective: January 1, 2023

(a) A pharmacy benefits manager or a covered entity shall not require a person covered under a pharmacy benefit contract, that provides coverage for prescription drugs, including specialty drugs, to pay an additional fee, higher copay, higher coinsurance, second copay, second coinsurance, or other penalty when obtaining prescription drugs, including specialty drugs from a contracted pharmacy.

(b) A pharmacy benefits manager or a covered entity shall not:

(1) Interfere with the right of a patient, participant, or beneficiary to choose a contracted pharmacy or contracted provider of choice in a manner that violates § 56-7-2359; or

(2) Offer financial or other incentives to a patient, participant, or beneficiary to persuade the patient, participant, or beneficiary to utilize a pharmacy owned by or financially beneficial to the pharmacy benefits manager or covered entity.

**Credits**
2021 Pub.Acts, c. 569, § 2, eff. July 1, 2021; 2022 Pub.Acts, c. 1070, § 5, eff. Jan. 1, 2023.

5

T.C.A. § 56-7-3121

§ 56-7-3121. Pharmacy networks

Effective: January 1, 2023

(a) A pharmacy benefits manager shall allow patients, participants, and beneficiaries of the pharmacy benefits plans and programs that the pharmacy benefits manager serves to utilize any pharmacy within this state that is licensed to dispense the prescription pharmaceutical product that the patient, participant, or beneficiary seeks to fill, as long as the pharmacy is willing to accept the same terms and conditions that the pharmacy benefits manager has established for at least one (1) of the networks of pharmacies that the pharmacy benefits manager has established to serve patients, participants, and beneficiaries within this state.

(b) A pharmacy benefits manager may establish a preferred network of pharmacies and a non-preferred network of pharmacies. The pharmacy benefits manager shall not prohibit a pharmacy from participating in either type of network within this state as long as the pharmacy is licensed by this state and the federal government and willing to accept the same terms and conditions that the pharmacy benefits manager has established for other pharmacies participating within the network that the pharmacy wishes to join.

(c) A pharmacy benefits manager shall not charge a patient, participant, or beneficiary of a pharmacy benefits plan or program that the pharmacy benefits manager serves a different copayment obligation or additional fee, or provide any inducement or financial incentive, for using any pharmacy within a given network of pharmacies established by the pharmacy benefits manager to serve patients, participants, and beneficiaries within this state.

**Credits**
2022 Pub.Acts, c. 1070, § 6, eff. Jan. 1, 2023.

T. C. A. § 56-7-3121, TN ST § 56-7-3121
Current with effective legislation from the 2024 Regular Session of the 113th Tennessee General Assembly. Some sections may be more current; see credits for details. Pursuant to §§ 1-1-110, 1-1-111, and 1-2-114, the Tennessee Code

6

Commission certifies the final, official version of the Tennessee Code and, until then, may make editorial changes to the statutes. References to the updates made by the most recent legislative session should be to the Public Chapter and not to the T.C.A. until final revisions have been made to the text, numbering, and hierarchical headings on Westlaw to conform to the official text. Unless legislatively provided, section name lines are prepared by the publisher.

T.C.A. § 56-7-3122

§ 56-7-3122. Part application to ERISA plans

Effective: January 1, 2023

Notwithstanding another law, this part applies to plans governed by the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. § 1001 et seq.).

**Credits**
2022 Pub.Acts, c. 1070, § 7, eff. Jan. 1, 2023.

8

T.C.A. § 56-7-3209

## § 56-7-3209. Part application to ERISA plans

Effective: January 1, 2023

Notwithstanding another law, this part applies to plans governed by the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. § 1001 et seq.).

**Credits**
2022 Pub.Acts, c. 1070, § 8, eff. Jan. 1, 2023.

9

2021 Tennessee Laws Pub. Ch. 569 (H.B. 1398)

TENNESSEE 2021 SESSION LAWS

2021 SESSION OF THE 112th GENERAL ASSEMBLY

Pub. Ch. 569
H.B. No. 1398

By Representatives Helton, Clemmons, Smith, Rudder, Faison, Bricken, Lafferty, Powers, Sparks, Mannis, Littleton, Grills, Warner, Hurt, Terry, Whitson, Carringer, Kumar, Moon, Eldridge, Hall, Hakeem, Ramsey, Tim Hicks, Mitchell, Cepicky, Hawk, Sherrell, Griffey, Casada, Weaver, Alexander, Moody, Crawford, Reedy, Hodges, Russell, Cochran, Leatherwood, Jerry Sexton, Wright, Calfee, Farmer, Garrett, Freeman, Beck, Lynn, Zachary, Jernigan, Windle, Powell, Curtis Johnson, Darby, Rudd, Doggett, Ogles, Williams, Haston, Vaughan, Howell, Ragan, Harris, Shaw, Towns, Hardaway, Chism, White, Marsh, Carr, Gant, Keisling, Gloria Johnson, Lamberth, Todd, Miller, Camper

Substituted for: Senate Bill No. 1617

By Senators Reeves, Bell, Yager, Haile, Swann, Briggs, Campbell, Jackson

AN ACT to amend Tennessee Code Annotated, Title 4; Title 56 and Title 71, relative to pharmacy benefits.

BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF TENNESSEE:

SECTION 1. Tennessee Code Annotated, Title 56, Chapter 7, Part 31, is amended by adding the following as a new section:

(a) A health insurance issuer, managed health insurance issuer as defined in § 56–32–128(a), pharmacy benefits manager, or other third-party payer shall not:

(1) Reimburse a 340B entity for pharmacy-dispensed drugs at a rate lower than the rate paid for the same drug by national drug code number to pharmacies that are not 340B entities;

(2) Assess a fee, chargeback, or adjustment upon a 340B entity that is not equally assessed on non–340B entities;

10

(3) Exclude 340B entities from its network of participating pharmacies based on criteria that is not applied to non–340B entities; or

(4) Require a claim for a drug by national drug code number to include a modifier to identify that the drug is a 340B drug.

(b) With respect to a patient eligible to receive drugs subject to an agreement under 42 U.S.C. § 256b, a pharmacy benefits manager, or third party that makes payment for those drugs, shall not discriminate against a 340B entity in a manner that violates § 56–7–2359 or otherwise prevents or interferes with the patient's choice to receive those drugs from the 340B entity.

(c) Notwithstanding § 56–7–1005, this section does not apply to:

(1) The TennCare program administered under the Medical Assistance Act of 1968, compiled in title 71, chapter 5, part 1, or a successor Medicaid program;

(2) The CoverKids Act of 2006, compiled in title 71, chapter 3, part 11, or a successor program; or

(3) The prescription drug program described in chapter 57 of this title, or a successor program.

(d) As used in this section:

(1) "340B entity" means a covered entity participating in the federal 340B drug discount program, as defined in section 340B of the Public Health Service Act, 42 U.S.C. § 256b, including the entity's pharmacy or pharmacies, or any pharmacy or pharmacies under contract with the 340B covered entity to dispense drugs on behalf of the 340B covered entity; and

(2) "National drug code number" means the unique national drug code number that identifies a specific approved drug, its manufacturer, and its package presentation.

SECTION 2. Tennessee Code Annotated, Title 56, Chapter 7, Part 31, is amended by adding the following as a new section:

(a) A pharmacy benefits manager or a covered entity shall not require a person

11

covered under a pharmacy benefit contract, that provides coverage for prescription drugs, including specialty drugs, to pay an additional fee, higher copay, higher coinsurance, second copay, second coinsurance, or other penalty when obtaining prescription drugs, including specialty drugs from a contracted pharmacy.

(b) A pharmacy benefits manager or a covered entity shall not interfere with the patient's right to choose a contracted pharmacy or contracted provider of choice in a manner that violates § 56–7–2359 or by other means, including inducement, steering, or offering financial or other incentives.

SECTION 3. Tennessee Code Annotated, Title 56, Chapter 7, Part 32, is amended by adding the following as a new section:

(a) Notwithstanding a law to the contrary, a pharmacy benefits manager or a covered entity shall base the calculation of any coinsurance or deductible for a prescription drug or device on the allowed amount of the drug or device. For purposes of this section, coinsurance or deductible does not mean or include copayments.

(b) Notwithstanding a law to the contrary, a pharmacy benefits manager shall not charge a covered entity an amount greater than the reimbursement paid by a pharmacy benefits manager to a contracted pharmacy for the prescription drug or device.

(c)(1) Notwithstanding a law to the contrary, and except as otherwise provided in this subsection (c), a pharmacy benefits manager shall not reimburse a contracted pharmacy for a prescription drug or device an amount that is less than the actual cost to that pharmacy for the prescription drug or device.

(2)(A) Subdivision (c)(1) does not apply to a pharmacy benefits manager when utilizing a reimbursement methodology that is identical to the methodology provided for in the state plan for medical assistance approved by the federal centers for medicare and medicaid services.

(B) If a pharmacy benefits manager utilizes a reimbursement methodology that is identical to the methodology provided for in the state plan for medical assistance approved by the federal centers for medicare and medicaid services, then the pharmacy benefits manager shall establish a process for a pharmacy to appeal a reimbursement paid at average acquisition cost and receive an adjusted payment by providing valid and reliable evidence that the reimbursement does not reflect

12

the actual cost to the pharmacy for the prescription drug or device.

(3)(A) Subdivision (c)(1) does not apply to a covered entity or pharmacy benefits manager that establishes a clearly defined process through which a pharmacy may contest the actual reimbursement received for a particular drug or medical product or device.

(B) If a pharmacy chooses to contest the actual reimbursement cost for a particular drug or medical product or device, then the pharmacy has the right to designate a pharmacy services administrative organization or other agent to file and handle its appeal of the actual reimbursement.

(4) A covered entity's or pharmacy benefits manager's appeals process must be approved by the commissioner of commerce and insurance and comply with the timing and notice requirements of § 56–7–3108.

(d) As used in this section, "allowed amount" means the cost of a prescription drug or device after applying pharmacy benefits manager or covered entity pricing discounts available at the time of the prescription claim transaction.

SECTION 4. Tennessee Code Annotated, Title 56, Chapter 7, Part 32, is amended by adding the following as a new section:

A pharmacy benefits manager has a responsibility to report to the plan and the patient any benefit percentage that either are entitled to as a benefit as a covered person.

SECTION 5. Tennessee Code Annotated, Title 56, Chapter 7, Part 32, is amended by adding the following as a new section:

(a)(1) A covered entity shall, upon request of an enrollee, enrollee's healthcare provider, or authorized third party, furnish the cost, benefit, and coverage data described in subsection (b) to the enrollee, the enrollee's healthcare provider, or an authorized third party, and shall ensure that the data is:

(A) Accurate as of the most recent change to the data that was made prior to the date of request;

(B) Provided in real time; and

(C) Provided in the same format in which the request is made.

(2)(A) A request for coverage data must be in a format that uses established industry content and transport standards as published by the following:

(i) A standard developing organization that is accredited by the American National Standards Institute, including, but not limited to, the National Council for Prescription Drug Programs, ASC X 12, and Health Level 7; or

(ii) A relevant governing entity of this state or the federal government, including, but not limited to, the federal centers for medicare and medicaid services and the office of national coordinator for health information technology.

(B) The following are not acceptable formats for requests for coverage data under this section:

(i) A facsimile; or

(ii) Use of a proprietary payor or patient portal or other electronic form.

(b) A covered entity that receives a request for data that complies with subsection (a) shall provide the following data for each drug covered under the enrollee's health plan:

(1) The enrollee's eligibility information for the drug;

(2) A list of any clinically appropriate alternatives to drugs covered under the enrollee's health plan;

(3) Cost–sharing information for the drugs and the clinically appropriate alternatives; and

(4) Applicable utilization management requirements for the drugs or clinically appropriate alternatives, including prior authorization, step therapy, quantity limits, and site-of-service restrictions.

(c) A covered entity that furnishes data as provided in subsection (b) shall not:

(1) Restrict, prohibit, or otherwise hinder a healthcare provider from communicating or sharing with the enrollee or enrollee's authorized representative:

(A) The data set forth in subsection (b);

14

(B) Additional information on lower-cost or clinically appropriate alternative drugs, whether or not the drugs are covered under the enrollee's plan; or

(C) Additional payment or cost-sharing information that may reduce the patient's out-of-pocket costs, such as cash price or patient assistance, and support programs sponsored by a manufacturer, foundation, or other entity;

(2) Except as may be required by law, interfere with, prevent, or materially discourage access to, exchange of, or the use of the data set forth in subsection (b), including:

(A) Charging fees;

(B) Failing to respond to a request at the time made when such a response is reasonably possible;

(C) Implementing technology in nonstandard ways; or

(D) Instituting requirements, processes, policies, procedures, or renewals that are likely to substantially increase the complexity or burden of accessing, exchanging, or using the data; or

(3) Penalize a healthcare provider for:

(A) Disclosing the information described in subdivision (c)(1) to an enrollee; or

(B) Prescribing, administering, or ordering a clinically appropriate or lower-cost alternative drug.


SECTION 6. Sections 1–4 of this act take effect July 1, 2021, the public welfare requiring it. Section 5 of this act takes effect January 1, 2022, the public welfare requiring it.

Approved this 26th day of May, 2021

15

2022 Tennessee Laws Pub. Ch. 1070 (H.B. 2661)

TENNESSEE 2022 SESSION LAWS

2022 SESSION OF THE 112th GENERAL ASSEMBLY

Pub. Ch. 1070
H.B. No. 2661

By Mr. Speaker Sexton, Representatives Cepicky, Hawk, Terry, Bricken, Sherrell, Russell, Byrd, Hazlewood, Howell, Lynn, White, Todd, Helton

Substituted for: Senate Bill No. 2458

By Mr. Speaker McNally, Senators Reeves, Yager, Haile, Crowe, Gardenhire

AN ACT to amend Tennessee Code Annotated, Title 4; Title 10, Chapter 7, Part 5; Title 38; Title 53; Title 56; Title 63 and Title 71, relative to pharmacy benefits managers.

BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF TENNESSEE:

SECTION 1. Tennessee Code Annotated, Section 56–7–3206(c), is amended by deleting the subsection and substituting:

<< TN ST § 56–7–3206 >>

(1) Notwithstanding any law to the contrary, a pharmacy benefits manager shall not reimburse a contracted pharmacy for a prescription drug or device an amount that is less than the actual cost to that pharmacy for the prescription drug or device.

(2)(A) A pharmacy benefits manager shall establish a process for a pharmacy to appeal a reimbursement for failing to pay at least the actual cost to the pharmacy for the prescription drug or device.

(B) A covered entity's or pharmacy benefits manager's appeals process established pursuant to subdivision (c)(2)(A) must:

(i) Be approved by the commissioner of commerce and insurance;

(ii) Comply with the timing and notice requirements of § 56–7–3108 and such other requirements as the commissioner of commerce and insurance may

16

establish by rule; and

(iii) Permit a pharmacy or its designated agent to file an appeal using the standard appeal form described in subdivision (c)(2)(D).

(C) If a pharmacy chooses to contest a reimbursement for failing to pay at least the actual cost the pharmacy incurred for a particular drug or medical product or device, then the pharmacy has the right to designate a pharmacy services administrative organization or other agent to file and handle its appeal.

(D) The commissioner of commerce and insurance shall create and make available to pharmacy benefits managers and covered entities a standard form to be used by a pharmacy or its designated agent to file an appeal pursuant to this subdivision (c)(2) with a pharmacy benefits manager or covered entity.

(3)(A) If a pharmacy or agent acting on behalf of a pharmacy prevails in an appeal provided for in this subsection (c), then within seven (7) business days after notice of the appeal is received by the pharmacy benefits manager or covered entity, the pharmacy benefits manager or covered entity shall:

(i) Make the necessary change to the challenged rate of reimbursement or actual cost;

(ii) If the product involved in the appeal is a drug, then provide to the pharmacy or agent the national drug code number for the drug on which the change is based;

(iii) Permit the challenging pharmacy to reverse and rebill the claim upon which the appeal is based;

(iv) Pay or waive the cost of any transaction fee required to reverse and rebill the claim;

(v) Reimburse the pharmacy at least the pharmacy's actual cost for the prescription drug or device; and

(vi) Apply the findings from the appeal as to the rate of reimbursement and actual cost for the particular drug or medical product or device to other similarly situated pharmacies.

(B) It is a violation of this subsection (c) if, after an appeal in which a pharmacy or agent acting on behalf of a pharmacy prevails, a pharmacy benefits manager or covered entity fails to reimburse the pharmacy at least actual cost.

(C) As used in subdivision (c)(3)(A)(vi), "similarly situated" means a pharmacy:

17

(i) That is in any of the pharmacy benefits manager's networks;

(ii) That purchases the particular drug or medical product or device to which the finding applies from the same pharmaceutical wholesaler as the pharmacy that prevailed in the appeal; and

(iii) To which the pharmacy benefits manager also applies the challenged rate of reimbursement or actual cost.

(4) If a pharmacy or agent acting on behalf of a pharmacy loses or is denied an appeal provided for in this section, then:

(A) If the product associated with the national drug code number or unique device identifier is available at a cost that is less than the challenged rate of reimbursement from a pharmaceutical wholesaler in this state, then within seven (7) business days after notice of the appeal is received by the pharmacy benefits manager or covered entity, the pharmacy benefits manager or covered entity shall provide the appealing pharmacy or agent with:

(i) The name of the national or regional pharmaceutical wholesalers operating in this state that have the particular drug or medical product or device currently in stock at a price that is less than the amount of the challenged rate of reimbursement; and

(ii)(*a*) If the product involved in the appeal is a drug, then the national drug code number for the drug; or

(*b*) If the product involved is a medical device, then the unique device identifier for the device; and

(B) If the product associated with the national drug code number or unique device identifier is not available at a cost that is less than the challenged rate of reimbursement from the pharmaceutical wholesaler from whom the pharmacy purchases the majority of prescription pharmaceutical products for resale, then the pharmacy benefits manager shall adjust the challenged rate of reimbursement to an amount equal to or greater than the appealing pharmacy's actual cost and permit the pharmacy to reverse and rebill each claim affected by the inability to procure the pharmaceutical product at a cost that is equal to or less than the previously challenged rate of reimbursement. The pharmacy benefits manager shall pay or waive the cost of any transaction fee required to reverse and rebill the claim.

18

SECTION 2. Tennessee Code Annotated, Section 56–7–3206, is amended by deleting subsection (d) and substituting:

<< TN ST § 56–7–3206 >>

(d)(1) Subsection (c) does not apply to a pharmacy benefits manager when utilizing a reimbursement methodology that is identical to the methodology provided for in the state plan for medical assistance approved by the federal centers for medicare and medicaid services.

(2) If a pharmacy benefits manager utilizes a reimbursement methodology that is identical to the methodology provided for in the state plan for medical assistance approved by the federal centers for medicare and medicaid services, then the pharmacy benefits manager shall establish a process for a pharmacy to appeal a reimbursement paid at average acquisition cost and receive an adjusted payment by providing valid and reliable evidence that the reimbursement does not pay at least the actual cost to the pharmacy for the prescription drug or device.

(e) A pharmacy benefits manager shall not include within the amount calculated to reimburse a pharmacy for actual cost pursuant to subsection (c) the amount of any professional dispensing fee that is payable to the pharmacy.

(f) A pharmacy benefits manager shall pay a professional dispensing fee at a rate that is not less than the amount paid by the TennCare program to a pharmacy, if:

(1) The pharmacy dispenses a prescription drug or device pursuant to an agreement with the pharmacy benefits manager or a covered entity; and

(2) The pharmacy's annual prescription volume is at a level that, if the pharmacy were a TennCare-participating ambulatory pharmacy, would qualify the pharmacy for the enhanced amount of professional dispensing fee for a low-volume pharmacy under the operative version of the Division of TennCare Pharmacy Provider Manual, or a successor manual.

(g)(1) The commissioner of commerce and insurance is authorized to promulgate rules to effectuate the purposes of this section. The rules must be promulgated in accordance with the Uniform Administrative Procedures Act, compiled in title 4, chapter 5.

(2) The commissioner shall institute an external appeals process for any appeal denied by a pharmacy benefits manager.

(h) As used in this section:

(1) "Actual cost":

(A) Means the amount a pharmacy paid as evidenced by documentation that includes, but is not limited to, the invoice price minus discounts, price concessions, rebates, or other reductions; and

(B) As used in subdivision (h)(1)(A), "discounts, price concessions, rebates, or other reductions" do not include a cash discount; and

(2) "Allowed amount" means the cost of a prescription drug or device after applying pharmacy benefits manager or covered entity pricing discounts available at the time of the prescription claim transaction.

SECTION 3. Tennessee Code Annotated, Section 56–7–3102(1), is amended by deleting the subdivision and substituting:

<< TN ST § 56–7–3102 >>

(1) "Covered entity":

(A) Means an individual or entity that provides health coverage to covered individuals who are employed or reside in this state, and includes, but is not limited to:

(i) A health insurance issuer;

(ii) A managed health insurance issuer, as defined in § 56–32–128(a);

(iii) A nonprofit hospital;

(iv) A medication service organization;

(v) An insurer;

(vi) A health coverage plan;

(vii) A health maintenance organization licensed to practice pursuant to this title;

(viii) A health program administered by this state or its political subdivisions,

including the TennCare programs administered pursuant to the waivers approved by the United States department of health and human services;

(ix) A nonprofit insurance company;

(x) A prepaid plan;

(xi) A self-insured entity;

(xii) Plans governed by the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. § 1001 et seq.); and

(xiii) An employer, labor union, or other group of persons organized in this state; and

(B) Does not include:

(i) A health plan that provides coverage only for accidental injury, specified disease, hospital indemnity, Medicare supplement, disability income, or other long-term care; or

(ii) A plan subject to regulation under Medicare part D;

<< TN ST § 56–7–3102 >>

SECTION 4. Tennessee Code Annotated, Section 56–7–3102(5), is amended by deleting "self-insured entities, and" and substituting "self-insured entities, plans governed by the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. § 1001 et seq.), and".

SECTION 5. Tennessee Code Annotated, Section 56–7–3120, is amended by deleting subsection (b) and substituting:

<< TN ST § 56–7–3120 >>

(b) A pharmacy benefits manager or a covered entity shall not:

(1) Interfere with the right of a patient, participant, or beneficiary to choose a contracted pharmacy or contracted provider of choice in a manner that violates § 56–7–2359; or

(2) Offer financial or other incentives to a patient, participant, or beneficiary to

21

persuade the patient, participant, or beneficiary to utilize a pharmacy owned by or financially beneficial to the pharmacy benefits manager or covered entity.

SECTION 6. Tennessee Code Annotated, Title 56, Chapter 7, Part 31, is amended by adding the following as new subsections:

(a) A pharmacy benefits manager shall allow patients, participants, and beneficiaries of the pharmacy benefits plans and programs that the pharmacy benefits manager serves to utilize any pharmacy within this state that is licensed to dispense the prescription pharmaceutical product that the patient, participant, or beneficiary seeks to fill, as long as the pharmacy is willing to accept the same terms and conditions that the pharmacy benefits manager has established for at least one (1) of the networks of pharmacies that the pharmacy benefits manager has established to serve patients, participants, and beneficiaries within this state.

(b) A pharmacy benefits manager may establish a preferred network of pharmacies and a non-preferred network of pharmacies. The pharmacy benefits manager shall not prohibit a pharmacy from participating in either type of network within this state as long as the pharmacy is licensed by this state and the federal government and willing to accept the same terms and conditions that the pharmacy benefits manager has established for other pharmacies participating within the network that the pharmacy wishes to join.

(c) A pharmacy benefits manager shall not charge a patient, participant, or beneficiary of a pharmacy benefits plan or program that the pharmacy benefits manager serves a different copayment obligation or additional fee, or provide any inducement or financial incentive, for using any pharmacy within a given network of pharmacies established by the pharmacy benefits manager to serve patients, participants, and beneficiaries within this state.

SECTION 7. Tennessee Code Annotated, Title 56, Chapter 7, Part 31, is amended by adding the following as a new section:

Notwithstanding another law, this part applies to plans governed by the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. § 1001 et seq.).

SECTION 8. Tennessee Code Annotated, Title 56, Chapter 7, Part 32, is amended

22

by adding the following as a new section:

Notwithstanding another law, this part applies to plans governed by the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. § 1001 et seq.).

SECTION 9. Tennessee Code Annotated, Title 56, Chapter 7, Part 31, is amended by adding the following as new subsections:

(a) Except as provided in subsection (b), any information obtained or produced by the department pursuant to an audit of a pharmacy benefits manager is confidential, is not a public record subject to disclosure, and is exempt from title 10, chapter 7.

(b) Audit findings by the department based upon a completed audit of a pharmacy benefits manager are public records subject to public disclosure by the department.

SECTION 10. Tennessee Code Annotated, Title 56, Chapter 7, Part 32, is amended by adding the following as a new section:

A violation of this part may subject the pharmacy benefits manager or covered entity to the sanctions described in § 56–2–305.

SECTION 11. If any provision of this act or its application to any person or circumstance is held invalid, then the invalidity does not affect other provisions or applications of the act that can be given effect without the invalid provision or application, and to that end, the provisions of this act are severable.

SECTION 12. For the purpose of promulgating rules, this act takes effect upon becoming a law, the public welfare requiring it. For all other purposes, this act takes effect January 1, 2023, the public welfare requiring it, and applies to policies, plans, contracts, and agreements that are entered into, amended, or renewed to take effect on or after that date.

Approved this 25th day of May, 2022

23

2007 Tennessee Laws Pub. Ch. 224 (S.B. 1112)

TENNESSEE 2007 SESSION LAWS

2007 SESSION OF THE 105th GENERAL ASSEMBLY

Pub. Ch. 224

S.B. No. 1112
INSURANCE—PHARMACY BENEFITS—MANAGERS AND MANAGEMENT

By McNally, Burks, Marrero, Bunch, Williams, Raymond Finney

Substituted for: H.B. No. 1343

By Overbey, Shepard, Matheny, Hackworth, Sargent, Eldridge

AN ACT to amend Tennessee Code Annotated, Title 56 and Title 63, relative to pharmacy benefits managers.

BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF TENNESSEE:

SECTION 1. Tennessee Code Annotated, Title 56, is amended by adding the following as a new part to be appropriately designated:
56–___–_____.
Pharmacy benefits managers shall, and contracts for pharmacy benefits management must, comply with the requirements of this part.
56–___–_____.
As used in this part, unless the context otherwise requires:

(1) "Covered entity" means a health insurance issuer, managed health insurance issuer as defined in § 56–32–228(a), nonprofit hospital, medication service organization, insurer, health coverage plan, health maintenance organization licensed to practice pursuant to Title 56, a health program administered by the state or its political subdivisions including the TennCare programs administered pursuant to the waivers approved by the United States Department of Health and Human Services, nonprofit insurance companies, prepaid plans, self-insured entities, and all other corporations, entities or persons, or an employer, labor union, or other group of persons organized in the state that provides health coverage to covered individuals who are employed or reside in the state. "Covered entity" does not include a health plan that provides coverage only for accidental injury, specified disease, hospital indemnity, Medicare supplement, disability income, or other long-term care;

24

(2) "Pharmacy benefits manager" means a person, business or other entity and any wholly or partially owned subsidiary of such entity, that administers the medication and/or device portion of pharmacy benefits coverage provided by a covered entity. "Pharmacy benefits manager" includes, but is not limited to, a health insurance issuer, managed health insurance issuer as defined in § 56–32–228(a), nonprofit hospital, medication service organization, insurer, health coverage plan, health maintenance organization licensed to practice pursuant to Title 56, a health program administered by the state or its political subdivisions including the TennCare programs administered pursuant to the waivers approved by the United States Department of Health and Human Services, nonprofit insurance companies, prepaid plans, self-insured entities, and all other corporations, entities or persons acting for a pharmacy benefits manager in a contractual or employment relationship in the performance of pharmacy benefits management for a covered entity and includes, but is not limited to, a mail order pharmacy; and

(3) "Pharmacy" and "Pharmacist" have the same meanings as those terms are defined in § 63–10–204.
56–__–_____.

(a) When an audit of records of a pharmacist or pharmacy is conducted by a covered entity, a pharmacy benefits manager, the state or its political subdivisions, or any other entity representing the same, it shall be conducted in the following manner:

(1) Written notice shall be given to the pharmacy or pharmacist at least two (2) weeks prior to conducting the initial on-site audit for each audit cycle;

(2) Any audit performed under this section which involves clinical or professional judgment must be conducted in consultation with a pharmacist who has knowledge of the provisions of the Tennessee Pharmacy Practice Act under Title 63, Chapter 10;

(3) Any clerical or record-keeping error, such as a typographical error, scrivener's error, or computer error, regarding a required document or record may not, in and of itself, constitute fraud; however, such claims may be subject to recoupment. Notwithstanding any other provision of law to the contrary, no such claim shall be subject to criminal penalties without proof of intent to commit fraud;

(4) A pharmacy or pharmacist may use the records of a hospital, physician, or other authorized practitioner of the healing arts for drugs or medical supplies written or

25

transmitted by any means of communication for purposes of validating pharmacy records with respect to orders or refills of a legend or narcotic drug;

(5) A finding of overpayment or underpayment may be a projection based on the number of patients served having a similar diagnosis or on the number of similar orders or refills for similar drugs; however, recoupment of claims must be based on the actual overpayment or underpayment unless the projection for overpayment or underpayment is part of a settlement as agreed to by the pharmacy or pharmacist;

(6) Each pharmacy or pharmacist shall be audited under the standards and parameters as other similarly situated pharmacies or pharmacists audited by a covered entity, a pharmacy benefits manager, the state or its political subdivisions, or any other entity representing the same;

(7) A pharmacy or pharmacist shall be allowed the length of time described in the pharmacy's or pharmacist's contract or provider manual, whichever is applicable, which shall not be less than thirty (30) days, following receipt of the preliminary audit report in which to produce documentation to address any discrepancy found during an audit. If the pharmacy's or pharmacist's contract or provider manual does not specify the allowed length of time for the pharmacy or pharmacist to address any discrepancy found in the audit following receipt of the preliminary report, such pharmacy or pharmacist shall be allowed at least thirty (30) days following receipt of the preliminary audit report to respond and produce documentation;

(8) The period covered by an audit may not exceed two (2) years from the date the claim was submitted to or adjudicated by a covered entity, a pharmacy benefits manager, the state or its political subdivisions, or any other entity representing the same, except this provision will not apply where a longer period is required by any federal rule or law;

(9) An audit shall not be initiated or scheduled during the first seven (7) calendar days of any month due to the high volume of prescriptions filled during that time unless otherwise consented to by the pharmacy or pharmacist;

(10) The preliminary audit report must be delivered to the pharmacy or pharmacist within one hundred twenty (120) days after conclusion of the audit. A final audit report shall be delivered to the pharmacy or pharmacist within six (6) months after receipt of the preliminary audit report or final appeal, whichever is later; and

(11) Notwithstanding any other provision of law to the contrary, any audit of a

26

pharmacy or pharmacist shall not use the accounting practice of extrapolation in calculating recoupments or penalties for audits.

(b) Recoupments of any disputed funds shall only occur after final internal disposition of the audit, including the appeal process as set forth in subsection (c) of this section.

(c) Each pharmacy benefits manager, as defined in 56–___–____ (a)(2), conducting an audit shall establish an appeals process under which a pharmacy or pharmacist may appeal an unfavorable preliminary audit report to the pharmacy benefits manager on whose behalf the audit was conducted. The pharmacy benefits manager conducting any audit shall provide to the pharmacy or pharmacist, before or at the time of delivery of the preliminary audit report a written explanation of the appeals process, including the name, address and telephone number of the person to whom an appeal should be addressed. If, following the appeal, it is determined that an unfavorable audit report or any portion thereof is unsubstantiated, the audit report or such portion shall be dismissed without the necessity of further proceedings. 56–___–_____.

(a) Reimbursement by a pharmacy benefits manager under a contract to a pharmacist or pharmacy for prescription drugs and other products and supplies that is calculated according to a formula that uses a nationally recognized reference in the pricing calculation shall use the most current nationally recognized reference price or amount in the actual or constructive possession of the pharmacy benefits manager or its agent.

(b) For purposes of compliance with this section, pharmacy benefits managers shall be required to update the nationally recognized reference prices or amounts used for calculation of reimbursement for prescription drugs and other products and supplies no less than every three (3) business days.

56–___–_____.
No contract entered into or amended on or after the effective date of this act shall contain provisions in violation of this act.

SECTION 2. If any provision of this act or the application thereof to any person or circumstances is held invalid, such invalidity shall not affect other provisions or applications of the act which can be given effect without the invalid provision or application, and to this end the provisions of this act are severable.

27

SECTION 3. This act shall take effect July 1, 2007, the public welfare requiring it.

Approved this 24th day of May, 2007