**No. 25-5416**

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

MCKEE FOODS CORPORATION,

*Plaintiff-Appellee,*

v.

BFP INC.,

*Defendant,*

&

CARTER LAWRENCE,

*Defendant-Appellant.*

On appeal from the United States District Court
for the Eastern District of Tennessee
No. 1:21-cv-279

## The Insurance Commissioner's Reply Brief

Jonathan Skrmetti
  *Attorney General & Reporter*
J. Matthew Rice
  *Solicitor General*
Gabriel Krimm
  *Senior Assistant Solicitor General*
Michael N. Wennerlund
  *Assistant Attorney General*
State of Tennessee
Office of the Attorney General
P.O. Box 20207
Nashville, TN 37202
Gabriel.Krimm@ag.tn.gov
(615) 532-5596
  *Counsel for the Commissioner of
  the Tennessee Department of
  Commerce & Insurance*

# TABLE OF CONTENTS

Introduction ............................................................................................... 1

Argument .................................................................................................... 1

I.  McKee lacks a justiciable claim to equitable relief. ......................... 1

   A.  McKee's claimed ERISA right of action provides it no
       pathway to court-ordered relief. ............................................... 2

   B.  To the extent ERISA permits suit, McKee has failed to
       properly establish the jurisdictional prerequisites. ................... 8

II.  ERISA does not preempt the Pharmacy Inclusion Laws. ............... 16

   A.  The challenged laws do not concern ERISA's purview. ........... 17

       1.  The laws do not target employee-benefit plans ................. 17

       2.  The laws do not compel employers to provide any
          substantive benefits. ........................................................ 19

   B.  The challenged laws do not frustrate ERISA's aims. ............... 23

   C.  The challenged laws regulate insurance. .................................. 23

       1.  Pharmacy networking is an insurance-industry
          practice subject to state regulation. ................................. 24

       2.  PBMs must comply with state law when they make
          and maintain pharmacy networks. .................................. 24

       3.  The record in this case provides no basis to protect
          McKee's PBM from state regulation. ................................ 28

III.  The district court granted improper relief. .................................... 29

Conclusion ............................................................................................... 31

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Sandoval,*
532 U.S. 275 (2001)................................................................2, 3

*Ammex, Inc. v. Cox,*
351 F.3d 697 (6th Cir. 2003).......................................................31

*Armstrong v. Exceptional Child Ctr., Inc.,*
575 U.S. 320 (2015)...................................................................8

*Associated Builders & Contractors v.*
*Mich. Dep't of Lab. & Econ. Growth,*
543 F.3d 275 (6th Cir. 2008)......................................... 1, 19, 26

*Averett v. HHS,*
943 F.3d 313 (6th Cir. 2019).......................................................7

*Bazzetta v. McGinnis,*
430 F.3d 795 (6th Cir. 2005)......................................................29

*Bell v. Taylor,*
827 F.3d 699 (7th Cir. 2016)......................................................24

*Benvenuto v. Conn. Gen. Life Ins.,*
643 F. Supp. 87 (D.N.J. 1986)....................................................25

*Bluecross Blueshield of Tenn., Inc. v. Nicolopoulos,*
136 F.4th 681 (6th Cir. 2025) ............................................ *passim*

*Bond v. United States* (*Bond I*),
564 U.S. 211 (2011)...................................................................8

*Bond v. United States* (*Bond II*),
572 U.S. 844 (2014)...................................................................8

*Boone Cnty. Republican Party Exec. Comm. v. Wallace,*
132 F.4th 406 (6th Cir. 2025) ....................................................12

*Boyle v. Anderson,*
  68 F.3d 1093 (8th Cir. 1995) .............................................................. 26

*Brown v. Davenport,*
  596 U.S. 118 (2022) ............................................................................ 5

*Cal. Div. of Lab. Standards Enf't v. Dillingham Const., N.A., Inc.,*
  519 U.S. 316 (1997) ..................................................................... 17, 19

*Chapman v. Tristar Prods., Inc.,*
  940 F.3d 299 (6th Cir. 2019) ............................................................ 16

*Chelf v. Prudential Ins.,*
  31 F.4th 459 (6th Cir. 2022) ............................................................. 24

*Children's Healthcare is a Legal Duty v. Deters,*
  92 F.3d 1412 (6th Cir. 1996) ............................................................ 11

*Christian Healthcare Ctrs., Inc. v. Nessel,*
  117 F.4th 826 (6th Cir. 2024) ........................................................... 12

*Cox v. Ky. Dep't of Transp.,*
  53 F.3d 146 (6th Cir. 1995) ..................................................... 2, 24, 27

*Coyne & Delaney Co. v. Selman,*
  98 F.3d 1457 (4th Cir. 1996) ............................................................ 26

*Crugher v. Prelesnik,*
  761 F.3d 610 (6th Cir. 2014) ............................................................ 10

*Denny's, Inc. v. Cake,*
  364 F.3d 521 (4th Cir. 2004) ...................................................... 5, 6, 7

*Diamond Alt. Energy, LLC v. EPA,*
  145 S. Ct. 2121 (2025) .................................................................. 9, 10

*District of Columbia v. Greater Wash. Bd. of Trade,*
  506 U.S. 125 (1992) ............................................................................ 4

*Doe v. Lee,*
  102 F.4th 330 (6th Cir. 2024) ...................................................... 29, 30

*Doyle v. Hogan,*
   1 F.4th 249 (4th Cir. 2021) ................................................................... 11

*Ebu v. CIS,*
   134 F.4th 895 (6th Cir. 2025) ................................................................ 2

*Ex parte Young,*
   209 U.S. 123 (1908) ............................................................................. 9, 10

*Fox v. Saginaw Cnty.,*
   67 F.4th 284 (6th Cir. 2023) ............................................................... 9, 10

*Franchise Tax Bd. v. Constr. Laborers Tr.*
   463 U.S. 1 (1983) .................................................................................... 4

*Friends of George's, Inc. v. Mulroy,*
   108 F.4th 431 (6th Cir. 2024) ................................................................ 9

*Gobeille v. Liberty Mut. Ins.,*
   577 U.S. 312 (2016) ................................................................................ 4

*Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC,*
   758 F.3d 777 (6th Cir. 2014) ............................................................... 23

*Kentucky Association of Health Plans, Inc. v. Nichols,*
   227 F.3d 352 (6th Cir. 2000) ................................................... 22, 23, 26

*Kondaur Cap. Corp. v. Smith,*
   802 F. App'x 938 (6th Cir. 2020) .......................................................... 3

*Krafsur v. Davenport,*
   736 F.3d 1032 (6th Cir. 2013) ............................................................... 9

*L.W. ex rel. Williams v. Skrmetti,*
   73 F.4th 408 (6th Cir. 2023) ............................................................... 31

*Littler v. Ohio Ass'n of Pub. Sch. Emps.,*
   88 F.4th 1176 (6th Cir. 2023) ............................................................... 2

*Livingston v. Jay Livingston Music, Inc.,*
   142 F.4th 433 (6th Cir. 2025) ............................................................... 3

iv

*Lockhart v. Napolitano,*
  573 F.3d 251 (6th Cir. 2009) ............................................................... 30

*Loper Bright Enters. v. Raimondo,*
  603 U.S. 369 (2024) .............................................................. 5, 17, 30

*Lordmann Enters., Inc. v. Equicor, Inc.,*
  32 F.3d 1529 (11th Cir. 1994) ........................................................ 26

*Mackey v. Lanier Collection Agency & Serv., Inc.,*
  486 U.S. 825 (1988) ........................................................... 17, 18, 19

*Marbury v. Madison,*
  5 U.S. (1 Cranch) 137 (1803) ....................................................... 17, 29

*McFarland v. Henderson,*
  307 F.3d 402 (6th Cir. 2002) ............................................................ 30

*McKee Foods Corp. v. BFP Inc.,*
  No. 1:21-cv-279,
  2025 WL 968404 (E.D. Tenn. Mar. 31, 2025) ........................... 2, 16, 30

*McLemore v. Gumucio,*
  --- F.4th ---, 2025 WL 2319119 (6th Cir. 2025) ..................................... 7

*Medina v. Planned Parenthood S. Atl.,*
  145 S. Ct. 2219 (2025) ....................................................................... 3

*Memorial Hosp. Sys. v. Northbrook Life Ins.,*
  904 F.2d 236 (5th Cir. 1990) ............................................................ 26

*Metro. Life Ins. v. Massachusetts,*
  471 U.S. 724 (1985) ................................................................... 25, 27

*Mich. Corr. Org. v. Mich. Dep't of Corr.,*
  774 F.3d 895 (6th Cir. 2014) .............................................................. 3

*Montana v. Wyoming,*
  563 U.S. 368 (2011) ......................................................................... 15

*N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins.,*
  514 U.S. 645 (1995) ..................................................................... 4, 18

v

*Nair v. Oakland Cnty. Cmty. Mental Health Auth.*,
　443 F.3d 469 (6th Cir. 2006) ................................................................... 16

*Nemir v. Mitsubishi Motors Corp.*,
　381 F.3d 540 (6th Cir. 2004) ..................................................................... 4

*NGS American, Inc. v. Jefferson*,
　218 F.3d 519 (6th Cir. 2000) ......................................................... 5, 6, 7, 8

*Norton Outdoor Advert., Inc. v. Vill. of St. Bernard*,
　99 F.4th 840 (6th Cir. 2024) ................................................................... 16

*Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*,
　399 F.3d 692 (6th Cir. 2005) ................................................................... 26

*PCMA v. Mulready*,
　78 F.4th 1183 (10th Cir. 2023) .......................................................... 20, 28

*PCMA v. Rowe*,
　429 F.3d 294 (1st Cir. 2005) ................................................................... 26

*Rand v. Rowland*,
　154 F.3d 952 (9th Cir. 1998) ................................................................... 15

*Rinard v. Luoma*,
　440 F.3d 361 (6th Cir. 2006) ..................................................................... 4

*Russell v. Lundergan-Grimes*,
　784 F.3d 1037 (6th Cir. 2015) ................................................................. 10

*S & M Brands, Inc. v. Cooper*,
　527 F.3d 500 (6th Cir. 2008) ..................................................................... 9

*Self-Ins. Inst. of Am., Inc. v. Synder (SIIA II)*,
　827 F.3d 549 (6th Cir. 2016) ....................................................... 1, 17, 26

*Shaw v. Delta Air Lines, Inc.*
　463 U.S. 85 (1983) ............................................................................. 3, 18

*Singleton v. Wulff*,
　428 U.S. 106 (1976) ................................................................................ 30

*Spokeo, Inc. v. Robins,*
578 U.S. 330 (2016)........................................................................ 1, 2, 3

*Stearns v. Wood,*
236 U.S. 75 (1915).................................................................................1

*Stewart v. Martin,*
143 F.4th 675 (6th Cir. 2025) ..................................................... 2, 6, 16

*Texas v. ICC,*
258 U.S. 158 (1922)..............................................................................29

*Thiokol Corp. v. Dep't of Treasury (Thiokol I),*
987 F.2d 376 (6th Cir. 1993)............................................................ 4, 5, 6

*Thiokol Corp. v. Roberts (Thiokol II),*
76 F.3d 751 (6th Cir. 1996)........................................................... 18, 19

*Thirteen Inv. Co. v. Foremost Ins. Grand Rapids Mich.,*
67 F.4th 389 (7th Cir. 2023) ...............................................................24

*TransUnion LLC v. Ramirez,*
594 U.S. 413 (2021)...............................................................................10

*United States v. Hughes,*
733 F.3d 642 (6th Cir. 2013)..................................................................7

*United States v. Safa,*
484 F.3d 818 (6th Cir. 2007)................................................................17

*Whole Woman's Health v. Jackson,*
595 U.S. 30 (2021)................................................................. 10, 29, 31

*Wright v. Spaulding,*
939 F.3d 695 (6th Cir. 2019)........................................................23, 29

*Y.A. ex rel. Alzandani v. Hamtramck Pub. Schs.,*
137 F.4th 862 (6th Cir. 2025) ..............................................................10

*Yee v. City of Escondido,*
503 U.S. 519 (1992)..............................................................................24

vii

*Yoder v. Bowen,*
  146 F.4th 516 (6th Cir. 2025) ........................................................ 11, 12

**Statutes**

5 U.S.C. § 702 .............................................................................. 9

5 U.S.C. § 706 .............................................................................. 9

29 U.S.C. ch. 18 .......................................................................... 25

29 U.S.C. § 1132 ....................................................................... 6, 7

29 U.S.C. § 1144 ......................................................... 8, 23, 24, 28

Tenn. Code Ann. § 56-7-3121 ................................................ 13, 14, 21

Tenn. Code Ann. § 56-7-3120 ............................................................ 14

## INTRODUCTION[*]

McKee's response advances the sort of imprecise and inconsistent argument typical of ERISA litigation. It transparently pursues the "creat[ion of] a state-law-free zone around everything that affects [McKee's] ERISA plan." *Self-Ins. Inst. of Am., Inc. v. Synder* (*SIIA II*), 827 F.3d 549, 555 (6th Cir. 2016) (quoting *Associated Builders & Contractors v. Mich. Dep't of Lab. & Econ. Growth*, 543 F.3d 275, 284 (6th Cir. 2008)). And to get there, it focuses on "abstract propositions" rather than real-world circumstances. *Stearns v. Wood*, 236 U.S. 75, 78 (1915). It then repeatedly cries "waiver" to calcify the district court's quasi-legislative ruling. Resp. xi; *see id.* at 2, 21, 33, 42, 49–50. None of this can provide justification for affirming the judgment below.

## ARGUMENT

### I.    McKee lacks a justiciable claim to equitable relief.

To secure judgment from the district court, McKee needed to assert a valid "statutory right . . . to sue" and establish the district court's jurisdiction. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). Those are

---

[*] Pincites to district court filings use the PageID file-stamp pagination.

1

distinct, independent requirements. *See id.*; *Stewart v. Martin*, 143 F.4th 675, 682 (6th Cir. 2025). McKee met neither one. *See* Open. 17–28.

### A. McKee's claimed ERISA right of action provides it no pathway to court-ordered relief.

McKee begins its response by arguing that its complaint "stated a claim upon which relief c[ould] be granted." Resp. 2; *see id.* at 22. That would make sense on appeal from dismissal, but this appeal concerns McKee's receipt of summary judgment. *See* Open. 14–15 (discussing *McKee Foods Corp. v. BFP Inc.*, No. 1:21-cv-279, 2025 WL 968404 (E.D. Tenn. Mar. 31, 2025)). To justify that judgment, McKee had to show "entitle[ment] to [it] as a matter of law." *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). And to make that showing, McKee had to establish Congress "authorize[d]" McKee "to sue." *Spokeo*, 578 U.S. at 341; *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001); *see* Open. 17–18.

This Court has repeatedly reminded plaintiffs that "[t]he Declaratory Judgment Act 'does not create'" a right to sue. Open. 18 (quoting *Littler v. Ohio Ass'n of Pub. Sch. Emps.*, 88 F.4th 1176, 1180 n.1 (6th Cir. 2023)); *see, e.g.*, *Ebu v. CIS*, 134 F.4th 895, 902 (6th Cir. 2025). Yet McKee insists those holdings lack force when "there is federal question jurisdiction" and the plaintiff can prove preemption of a state law.

2

Resp. 25. This Court has rejected a similar arguments, calling them "circular and frivolous." *Kondaur Cap. Corp. v. Smith*, 802 F. App'x 938, 948 (6th Cir. 2020). It should do the same here.

Every viable claim needs a right of legal action to authorize suit over the substantive right being litigated. *See Spokeo*, 578 U.S. at 341; *Sandoval*, 532 U.S. at 286. Congress generally does not provide rights of action by implication, much less through conferrals of jurisdiction. *See Medina v. Planned Parenthood S. Atl.*, 145 S. Ct. 2219, 2229–30 & n.1 (2025). And the Declaratory Judgment Act's text does not grant a right of action, create any substantive rights, or confer jurisdiction. Instead, it provides only a "remedy for . . . right[s]" otherwise "enforceable in federal court." *Mich. Corr. Org. v. Mich. Dep't of Corr.*, 774 F.3d 895, 902 (6th Cir. 2014); *see Livingston v. Jay Livingston Music, Inc.*, 142 F.4th 433, 444 (6th Cir. 2025) (Readler, J., concurring).

None of the cases cited by McKee say anything to the contrary. *See* Resp. 23–24. In *Shaw v. Delta Air Lines, Inc.* the Supreme Court merely held that ERISA preemption "presents a federal question" capable of supporting federal subject-matter jurisdiction. 463 U.S. 85, 96 n.14 (1983); *see* Open. 20–21. And *Franchise Tax Board v. Construction Laborers*

3

*Trust* concerned rights of action granted by the California legislature, which the Supreme Court deemed unremovable to federal court. *See* 463 U.S. 1, 13, 27–28 (1983); *Thiokol Corp. v. Dep't of Treasury* (*Thiokol I*), 987 F.2d 376, 379 (6th Cir. 1993). Neither case establishes that the Declaratory Judgment Act contains a right of action for ERISA plan sponsors or fiduciaries. *See Bluecross Blueshield of Tenn., Inc. v. Nicolopoulos*, 136 F.4th 681, 688–89 (6th Cir. 2025). Neither case supports McKee's attempt to conjure such a right of action here.

Nor does it matter that "declaratory and injunctive actions" have been "used by ERISA plan sponsors and fiduciaries" to litigate preemption. Resp. 24 (citing *District of Columbia v. Greater Wash. Bd. of Trade*, 506 U.S. 125 (1992); *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins.*, 514 U.S. 645 (1995); *Gobeille v. Liberty Mut. Ins.*, 577 U.S. 312 (2016)). In none of these cases did the Supreme Court address the right-of-action issue. *See Greater Wash.*, 506 U.S. at 128–29; *Travelers*, 514 U.S. at 649; *Gobeille*, 577 U.S. at 315. Instead, the Court left that issue "lurk[ing] in the record" to be decided in subsequent lawsuits. *Rinard v. Luoma*, 440 F.3d 361, 363 (6th Cir. 2006) (quoting *Nemir v. Mitsubishi Motors Corp.*, 381 F.3d 540, 559 (6th Cir. 2004)). Indeed, "[a]

4

later court assessing a past decision must . . . appreciate the possibility that . . . different legal arguments may dictate a different outcome." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 426 (2024) (Gorsuch, J., concurring); *see Brown v. Davenport*, 596 U.S. 118, 141 (2022). And the outcome below cannot stand on the errant conclusion that the Declaratory Judgment Act provides a right to sue.

Nor can the outcome be upheld based on the ERISA right of action McKee asserts as fiduciary to its own ERISA plan. *See* Resp. 25–27. To support this theory, McKee cites *Thiokol Corp. v. Department of Treasury* (*Thiokol I*), 987 F.2d 376 (6th Cir. 1993), *cited by* Resp. 25, and *Denny's, Inc. v. Cake*, 364 F.3d 521 (4th Cir. 2004), *cited by* Resp. 26. But neither case squarely confronts, much less rebuts, the text-based argument Commissioner Lawrence has made. *See* Open. 18–21.

Start with *Thiokol I*. In that case, this Court held that "neither the Eleventh Amendment nor the [Tax Injunction Act] bars [ERISA fiduciaries] from suing [state] officials . . . for prospective declaratory and injunctive relief." 987 F.2d at 382. But just like *Shaw* and *Franchise Tax Board*, that holding addressed only the federal courts' subject-matter jurisdiction. *See id.* at 378; *Nicolopoulos*, 136 F.4th at 688–89; *NGS*

5

*American, Inc. v. Jefferson*, 218 F.3d 519, 529 (6th Cir. 2000). And to reach that holding, the Court did not have to say that the plaintiffs actually had a right of action "under ERISA." *Thiokol I*, 987 F.2d at 380. Instead, it had only to determine that the plaintiffs' assertion of such a right was not "frivolous." *Stewart*, 143 F.4th at 683. Most importantly, *Thiokol I* does not address what it means to "violate[]" ERISA or "enforce" ERISA's "provisions." 29 U.S.C. § 1132(a)(3); *cf. Jefferson*, 218 F.3d at 529–30 (addressing the question in a different context). The parties here dispute the meaning of those terms. *Compare* Open. 18–20, *with* Resp. 26–27. *Thiokol I* does not weigh in.

McKee's invocation of *Denny's* cannot carry its argument either. Like *Thiokol I*, the *Denny's* opinion addressed issues of jurisdiction rather than the scope of ERISA's right of action. *See* 364 F.3d at 524–27 & nn.4, 7. In fact, the *Denny's* court took care to avoid definitive statements on the latter issue, observing only that the "enforcement of an assertedly preempted state law . . . *arguably* . . . 'violat[es]'" ERISA's preemption clause, so fiduciary suits against state officers "*appear*[] to" be a way of "'enforc[ing]'" ERISA. *Id.* at 525, 528 (quoting 29 U.S.C. § 1132(a)(3)) (emphasis added). Those equivocal musings "do[] not bind [this Court],"

6

*McLemore v. Gumucio*, --- F.4th ---, 2025 WL 2319119, at *4 (6th Cir. 2025), and *Denny's* bases them only on say-so, loose language, and dicta. *See* 364 F.3d at 525–28. That was enough to settle the jurisdictional issue in *Denny's*, but it does not support McKee's final judgment here.

To affirm that judgment, this Court must decide whether Congress *actually* conferred a private right allowing ERISA fiduciaries to sue state officers in the way McKee has sued Commissioner Lawrence. *See id.*; Resp. 25–27; *cf. Nicolopoulos*, 136 F.4th at 689 (treating the merits question as a separate issue); *Jefferson*, 218 F.3d at 529–30 (rejecting a similar theory). This requires a careful appreciation for "the words that Congress chose in" ERISA, as well as the legal background that contextualizes those choices. *Averett v. HHS*, 943 F.3d 313, 318 (6th Cir. 2019) (quoting *United States v. Hughes*, 733 F.3d 642, 646 (6th Cir. 2013)). Here, the words "enforce" and "violate[]" naturally reference the rights and duties of ERISA plan "beneficiar[ies]" and "fiduciar[ies]." 29 U.S.C. § 1132(a)(3); *see* Open. 9–10, 20. But McKee offers no authority for recasting its fiduciary duties as "rights." Resp. 27. And it does not square its argument with the Supremacy Clause jurisprudence. *See id.*

7

Under that jurisprudence, ERISA does no more than its plain text indicates: it "supersede[s]" certain state laws that might otherwise govern private conduct. 29 U.S.C. § 1144(a); *see Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324 (2015). But this explicit shield against state-law liability is not a sword to use against the States. *See* Open. 20. That interpretation would assail the States' "integrity, dignity, and residual sovereignty" in a way Congress presumptively does not intend. *Bond v. United States* (*Bond I*), 564 U.S. 211, 221 (2011); *see Bond v. United States* (*Bond II*), 572 U.S. 844, 858, 862 (2014). In short, McKee can assert ERISA preemption as "a defense"; it cannot use ERISA to sue. *Jefferson*, 218 F.3d at 530.

## B. To the extent ERISA permits suit, McKee has failed to properly establish the jurisdictional prerequisites.

Even if McKee had a viable right of action, it still failed to establish jurisdiction. And in responding to the Commissioner's justiciability arguments, McKee repeatedly attacks straw men and misstates the applicable law. The critical issue is not whether McKee can bring claims against Commissioner Lawrence consistent with general "standing" jurisprudence. Resp. 2. The issue is whether McKee's constitutional standing *extends* to any ripe claim for "an injunction" or declaratory order that

is not barred by the Commissioner's sovereign immunity. *Fox v. Saginaw Cnty.*, 67 F.4th 284, 293 (6th Cir. 2023); *see* Open. 22–28. In misidentifying the hurdles it must clear, McKee commits critical errors.

*First*, McKee errs by relying on inapposite caselaw that fails to account for the constraints imposed by *Ex parte Young*, 209 U.S. 123 (1908). According to McKee, "[s]tanding does not require a 'certainly impending' threat of prosecution," despite this Court having said exactly that many times. Resp. 29; *see* Open. 23 (citing *Friends of George's, Inc. v. Mulroy*, 108 F.4th 431, 435 (6th Cir. 2024)). Rather, McKee believes it has standing to sue Commissioner Lawrence because it is "the 'object' of government regulation." Resp. 30 (quoting *Diamond Alt. Energy, LLC v. EPA*, 145 S. Ct. 2121, 2135 (2025)); *see id.* at 21.

This position overlooks the fact that McKee has sued a state officer who enjoys sovereign immunity. *See S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008). To be sure, the objects of *federal* regulation generally have standing to sue *federal* agencies under the Administrative Procedure Act, but that is largely because the APA waives the federal government's immunity from suit. *See Krafsur v. Davenport*, 736 F.3d 1032, 1036 (6th Cir. 2013) (citing 5 U.S.C. §§ 702, 706(2)(B)). And in such

9

lawsuits, the mere promulgation or recission of regulations is redressable by a court order "setting aside" the regulations themselves. *Diamond*, 145 S. Ct. at 2135 n.3. But state sovereign immunity prohibits similar challenges to state legislation. *See Whole Woman's Health v. Jackson*, 595 U.S. 30, 44 (2021). And that means plaintiffs like McKee must establish standing within the "narrow" parameters of *Ex parte Young*. *Id.* at 39; *see Crugher v. Prelesnik*, 761 F.3d 610, 614 n.5 (6th Cir. 2014).

Under *Young*, a suit is jurisdictionally barred unless it seeks individualized, prospective relief from a state officer's specific, impending use of government power. *See Jackson*, 595 U.S. at 44. And that leaves plaintiffs one form of justiciable injury (an "imminent" enforcement action) and one form of "redress[]" (a prospective injunction). *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021); *see Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1047 (6th Cir. 2015). No other basis for standing can matter, because judgment requires a "case or controversy" between the plaintiff and a defendant subject to process. *See Y.A. ex rel. Alzandani v. Hamtramck Pub. Schs.*, 137 F.4th 862, 869 (6th Cir. 2025); *Fox*, 67 F.4th at 293. So McKee cannot rely on the broader standing principles applicable to APA litigation in its suit against Commissioner Lawrence.

10

*Second*, and relatedly, McKee errs by embracing the "operation of [its own] Pharmacy as the 'foundation' for its" lawsuit. Resp. 33 (quoting Open. 23). That might have been fine if Commissioner Lawrence "threatened" to shut down the pharmacy and McKee sought to "challenge[] the constitutionality of [that discrete] official[] *action.*" *Children's Healthcare is a Legal Duty v. Deters*, 92 F.3d 1412, 1415 (6th Cir. 1996). But the record in this case does not fit that fact pattern. *See* Open. 13–16, 23–28. Instead, McKee and the district court have viewed this suit as an open-ended, abstract "challenge" to multiple "statut[ory]" provisions, Resp. 36, rather than a real case or controversy concerning Commissioner Lawrence's "enforce[ment]" of some "specific" legal rule against McKee, *Doyle v. Hogan*, 1 F.4th 249, 255 (4th Cir. 2021).

McKee's reliance on *Yoder v. Bowen*, 146 F.4th 516 (6th Cir. 2025) (per curiam), *cited by* Resp. 30, only helps illustrate the problem. The plaintiffs in *Yoder* made their suit about something concrete: their ability to "us[e] drones to create and share . . . information" regarding "downed game." 146 F.4th at 521, 523. They likewise sought an appropriate form of relief: "a permanent injunction 'restraining'" Michigan officials "'from enforcing'" the State's laws "'against [them] in a manner that prevents

11

the creation, dissemination, and receipt of [such] information.'" *Id.* at 521 (quoting the record). The analogue here would be an injunction against Commissioner Lawrence prohibiting him "from enforcing" some discrete legal provision "against" McKee in a similarly tangible way. *Id.* Specifically, "a manner that prevents" McKee from offering low co-pays at its pharmacy despite its (purported) fiduciary right to do so. *Id.*

Instead, McKee tried to raise concerns over the operation of its pharmacy merely "to retroactively generate standing" in support of a broader dispute. *Christian Healthcare Ctrs., Inc. v. Nessel*, 117 F.4th 826, 849 (6th Cir. 2024). Neither the law nor the record evidence support the district court's decision to go along. *See* Open. 24–28.

*Third*, McKee errs by basing its fears of imminent injury on Commissioner Lawrence's general "intent to enforce the [Pharmacy Inclusion Laws] against ERISA plans." Resp. 37; *see id.* at 29. "[G]eneralized contentions" like those "offer little support for [an] argument" that regulators "will enforce" a specific prohibition against specific conduct. *Boone Cnty. Republican Party Exec. Comm. v. Wallace*, 132 F.4th 406, 416 (6th Cir. 2025). And in this case, the real question is not whether

12

Commissioner Lawrence plans to enforce Tennessee's laws but whether McKee plans to violate any legal rules in the first place.

Indeed, McKee insists that it is "suffering actual and ongoing harm" from its efforts to *comply* with the Pharmacy Inclusion Laws. Resp. 37. And if McKee means it is "suffering" as a plan "sponsor," such suffering has no redress through ERISA's right of action. *See* Open. 18. But even assuming McKee could sue as fiduciary to vindicate its prerogatives as ERISA plan sponsor, it has still misinterpreted the Pharmacy Inclusion Laws in a way that undermines its asserted justifications for suit.

To be clear, the Pharmacy Inclusion Laws do not dictate what substantive "benefits" any ERISA plan must provide. Resp. 37. Nor do they dictate the "providers" or "copays" for prescription-drug benefits an ERISA plan may offer. *Id.* They likewise stop short of outlawing "preferred pharmac[y networks] in Tennessee." *Id.* In fact, they do not even dictate networking "terms and conditions," as McKee's briefing suggests. Open. 13 (quoting Tenn. Code Ann. § 56-7-3121(a)).

Instead, the Pharmacy Inclusion Laws kick in only after such terms and conditions have been set — whether set by an ERISA plan, a PBM, or some other insurer. *See id.* And these laws merely dictate that all

13

pharmacies willing to accept those terms and conditions be allowed to sell their products and services on equal footing. *See id.* McKee thus has no basis for its concern that these laws might subject McKee Plan "participants" to "harm." Resp. 27. McKee makes no effort to explain why it could not impose network terms and conditions that punish or exclude pharmacies for "actions . . . tantamount to fraud." *Id.* And despite all its vague hand-wringing about control over its ERISA plan, McKee identifies no real-world circumstance in which it risked or avoided a refusal to do business with pharmacies willing to meet the standards of participation in the McKee Plan's network.

This same flaw also presents itself in McKee's less-ill-defined concern about "offering lower co-pays at the McKee Pharmacy." *Id.* at 32. McKee claims the Pharmacy Inclusion Laws "proscribe[]" this practice, but the statutory text makes that far from apparent. *Id.* To be sure, the low copays may constitute an "incentive[] . . . to persuade [McKee employees] . . . to utilize [that] pharmacy." Tenn. Code Ann. § 56-7-3120(b)(2). But that would not necessarily violate Tennessee law if McKee allowed *other* pharmacies to collect the same copays and back-end coverage. *See* Open. 13. Of course, the statute's true meaning must be

14

fixed by the Tennessee Supreme Court. *See Montana v. Wyoming*, 563 U.S. 368, 377 n.5 (2011). But for present purposes, it suffices to note that Commissioner Lawrence has done nothing to indicate an intent to take action against McKee for offering low co-pays at its company-owned pharmacy. *See* Open. 24–25.

McKee insists nonetheless that the record "fully support[s]" the district court's "factual determination" of an enforcement "threat" concerning McKee's pharmacy. Resp. 35. Here and elsewhere, McKee misunderstands a district court's role at summary judgment, which is not to make "factual findings" but to determine whether the record justifies a trial. *Id.* at 56; *see Rand v. Rowland*, 154 F.3d 952, 957 n.4 (9th Cir. 1998). And McKee conspicuously cites no evidence to support its confidence in the district court's purported view of the circumstances. *See* Resp. 35. This is because the Commissioner's general intent to enforce the Pharmacy Inclusion Laws does not establish intent to enforce any particular provision in any real-world circumstance. *See supra* at 12. And despite McKee's operation of the pharmacy for "some [two-and-a-half] years," evidence of specific intent to go after the McKee Pharmacy does not exist in the record of this case. Resp. 15; *see* Open. 24–25.

*Fourth*, McKee errs by claiming Commissioner Lawrence "waived" these threshold issues. Resp. 33. The Commissioner asserted his sovereign immunity below, and it received scant consideration. *See McKee*, 2025 WL 968404, at *6 n.4. Moreover, sovereign immunity can be asserted at any stage of litigation, even as an alternative to a favorable merits ruling. *See Nair v. Oakland Cnty. Cmty. Mental Health Auth.*, 443 F.3d 469, 476–77 (6th Cir. 2006). In addition, only a plaintiff can "forfeit[]" arguments establishing standing. *Norton Outdoor Advert., Inc. v. Vill. of St. Bernard*, 99 F.4th 840, 844 (6th Cir. 2024). A defendant cannot forfeit jurisdictional defects. *See Chapman v. Tristar Prods., Inc.,* 940 F.3d 299, 304 (6th Cir. 2019). In this case, jurisdictional defects make the district court's order an improper advisory opinion.

## II.    ERISA does not preempt the Pharmacy Inclusion Laws.

The threshold issues above provide just a subset of "alternative ground[s]" for reversing the decision below. *Nair*, 443 F.3d at 472; *see id.* at 477; *Stewart*, 143 F.4th at 682. If this case continues as an abstract dispute over ERISA preemption, that dispute should still come out in Commissioner Lawrence's favor. *See* Open. 28–54.

**A.      The challenged laws do not concern ERISA's purview.**

Tennessee's Pharmacy Inclusion Laws do not "relate to" ERISA plans except in the meaningless sense that "everything is related to everything else." *SIIA II*, 827 F.3d at 554 (quoting *Cal. Div. of Lab. Standards Enf't v. Dillingham Const., N.A., Inc.*, 519 U.S. 316, 335 (1997) (Scalia, J., concurring)).  It does not matter that some "[s]enior [government] officials" may hold lay or legal opinions to the contrary.  Resp. 39; *see United States v. Safa*, 484 F.3d 818, 821 (6th Cir. 2007).  This Court has the "province and duty . . . to say" that ERISA does not preempt the Pharmacy Inclusion Laws.  *Loper Bright*, 603 U.S. at 385 (quoting *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803)).

**1.      The laws do not target employee-benefit plans.**

McKee argues the Pharmacy Inclusion Laws "reference" ERISA plans by subjecting them to generally applicable regulations.  *See* Resp. 45–48.  But the hallmark of "reference to" preemption is "singl[ing] out ERISA . . . plans for different treatment."  Open. 31 (quoting *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 830 (1988)).  Attempting to avoid that caselaw, McKee's argument proves too much.

According to McKee, ERISA preempts any state law that (1) mentions ERISA plans and (2) has "an[y] effect on [such] plan[s]."  Resp. 48.

17

But what sort of law mentions ERISA plans despite having absolutely no "effect" on them? *Id.* McKee's read of precedent would lead to the preemption of any generally applicable law "impos[ing] requirements on ERISA-covered programs" as part of a broader sweep. *Id.* at 47 (emphasis omitted). That reading of the jurisprudence is wrong.

McKee's invocation of *Thiokol Corp. v. Roberts* (*Thiokol II*), 76 F.3d 751 (6th Cir. 1996), *cited by* Resp. 47, only helps rebut its own argument. The question in *Thiokol II* was "whether [ERISA preempted] the Michigan Single Business Tax." *Id.* at 753. This Court answered *no*, mainly because "state laws of general applicability can have effects on ERISA plans and still escape preemption." *Id.* at 755. In fact, States can apply such laws to ERISA plans event when doing so "subjects [plans] to significant administrative burdens and costs." *Id.* (quoting *Mackey*, 486 U.S. at 842 (Kennedy, J., dissenting)) (citing *Travelers*, 514 U.S. at 662). *Thiokol II* thus provides no support for a holding of preemption here.

To be sure, McKee relies on *Thiokol II* not for its outcome but for its discussion of "the *Shaw* exception," which provides that state laws having only "a 'tenuous, remote or peripheral' effect on [ERISA] plan[s]" are not preempted by ERISA. *Id.* at 754 (quoting *Shaw*, 463 U.S. at 100

18

n.21); *see id.* at 754–60. But a state law does not have to qualify for this one narrow (and dated) "exception" to avoid ERISA preemption. *See Associated Builders*, 543 F.3d at 279–81. And "the [Supreme] Court views 'refers to' cases as those in which the state legislature passed a statute 'specifically designed to affect' [ERISA] plan[s]." *Thiokol II*, 76 F.3d at 759 (citing *Mackey*, 486 U.S. at 829).

Put differently, preemption by "reference" to ERISA plans still requires the direct targeting of ERISA plans for special treatment. *See Dillingham*, 519 U.S. at 325; Open. 30–31 (citing *Thiokol II*, 76 F.3d at 758, 760–61 and several other circuit and Supreme Court cases). And McKee does not argue that the Pharmacy Inclusion Laws "target[]" ERISA plans for special treatment rather than "subject[ing] them to . . . requirements and prohibitions" applicable across the insurance marketplace. Resp. 48. Thus, because these laws "appl[y] to health [insurance] plans that are not covered by ERISA," they cannot be preempted for "referencing" ERISA plans. Open. 30 (quoting *Thiokol II*, 76 F.3d at 755).

### 2. The laws do not compel employers to provide any substantive benefits.

McKee's argument regarding "connection with" preemption cannot justify the district court's decision either.

19

*First*, it bears noting that McKee all but assumes what it must prove to win this case: that refusing to do business with some pharmacies on terms and conditions applied to other pharmacies constitutes a "substantive" component of prescription-drug coverage. *See* Open. 34–35. McKee does not engage with Commissioner Lawrence's distinction between a plan's pharmacy network and its formulary. *Compare id.* at 34, *with* Resp. 40 n.19, 43–45. Nor does McKee engage with Commissioner Lawrence's distinction between networks of pharmacies and networks of physicians. *Compare* Open. 38–40, *with* Resp. 40 n.19, 43–45. Instead, McKee points to other briefs and opinions filed in *PCMA v. Mulready*, 78 F.4th 1183 (10th Cir. 2023), despite the fact that none of them bind this Court or rebut the Commissioner's position. *See* Resp. 43–45.

*Second*, and relatedly, McKee makes multiple assertions premised on a misreading of the Pharmacy Inclusion Laws. According to McKee, the laws "functionally mandate that ERISA plans charge participants the same copays and/or fees at all pharmacies." *Id.* at 41. And McKee cannot "imagine anything that would be more 'central' to plan administration than the design of a provider network." *Id.* at 40 n.19. But the Pharmacy Inclusion Laws do not tell ERISA sponsors how to "design" their

20

networks or dictate "the extent of the participant's cost-sharing obligation." *Id.* They merely "dictate the equal treatment of pharmacies to tamp down on anti-competitive networking practices." Open. 13.

This distinction is subtle, but it exposes the critical flaw in McKee's preemption theory. The Pharmacy Inclusion Laws take as given that ERISA plans, PBMs, and traditional insurers will all design pharmacy networks. *See id.* And these laws take as given that those networks will operate based on "terms and conditions" set by whomever designs them. *Id.* (quoting Tenn. Code Ann. § 56-7-3121(a)). Such terms and conditions may include the amount of a beneficiary's copay, as well as the additional compensation a pharmacy can collect as coverage. *See id.*; *see also id.* at 5–7 (explaining how prescription drug coverage works). The Pharmacy Inclusion Laws do not "mandate" those terms in any way, shape, or form — much less in a way that would *prevent* ERISA plans from "ha[ving networks of] preferred pharmacies." Resp. 37.

Instead, the Pharmacy Inclusion Laws mandate only that the "terms and conditions" set by the network maker be offered to "any pharmacy 'willing to accept' them." Open. 13 (quoting Tenn. Code Ann. § 56-7-3121(a)). For any pharmacy unwilling or unable to meet the network

21

maker's terms, these laws provide no protection. *See id.* The point is to "prohibit[] discrimination" against out-of-network pharmacies willing to offer drugs on the same "'terms and conditions'" as in-network pharmacies. *Id.* (quoting Tenn. Code Ann. § 56-7-3121(a)). The point is not to dictate copays, coverage, or any other aspect of policy design.

*Third*, McKee is wrong to suggest that *Kentucky Association of Health Plans, Inc. v. Nichols*, 227 F.3d 352 (6th Cir. 2000), supports a holding of "connection with" preemption. *See* Resp. 41–43. McKee does not rebut Commissioner Lawrence's argument that this Court can "distinguish[]" *Nichols* on the "fact[s]." Open. 38; *see supra* at 20. And despite the *Nichols* court's "deliberate, detailed analysis," its discussion of "connection with" preemption is dictum. Resp. 42.

To be sure, "there would have been no need for [*Nichols*] to address [ERISA's] savings clause" if Kentucky's laws were not otherwise preempted. *Id.* at 43. But there ultimately *was no need* to say Kentucky's laws had a "connection with" ERISA plans because ERISA did not preempt them regardless. *See* Open. 37. The length and complexity of the "connection with" analysis in *Nichols* does not make it "necessary to the outcome." *Haddad v. Alexander, Zelmanski, Danner & Fioritto,*

22

*PLLC*, 758 F.3d 777, 781 (6th Cir. 2014). Instead, the *Nichols* court's "deliberate" and "thorough . . . reason[ing]" still merely attempts to "answer . . . a legal question" that was "not part of [that] case." *Wright v. Spaulding*, 939 F.3d 695, 700–01 (6th Cir. 2019).

### B.   The challenged laws do not frustrate ERISA's aims.

Both sides have provided only "short section[s]" of briefing on McKee's assertion of "obstacle preemption." Resp. 48. That makes sense, because McKee never carried the burden to support this theory with a fleshed-out argument. *See* Open. 41–42. Even now, McKee says no more than that "obstacle preemption may apply" here. Resp. 48. And since it apparently applies only for reasons covered by the argument for express preemption, *see id.* at 49, it provides no basis for affirmance.

### C.   The challenged laws regulate insurance.

To conclude its merits arguments, McKee stresses that this Court should ignore ERISA's savings clause because Commissioner Lawrence "never pled, argued, or even suggested" it is at play. *Id.* at 49; *see id.* at 21, 50. But nothing in the text of ERISA casts the savings clause as "an affirmative defense" that a state officer has the burden to plead and prove in a pre-enforcement challenge. Resp. 50. Instead, the text tells courts how ERISA's preemptive terms "shall be construed." 29 U.S.C.

23

§ 1144(b)(2)(A).  And in this case, McKee assumed the burden to "establish[]" preemption to support its "*prima facie* case" for equitable relief. *Thirteen Inv. Co. v. Foremost Ins. Grand Rapids Mich.*, 67 F.4th 389, 392 (7th Cir. 2023) (quoting *Bell v. Taylor*, 827 F.3d 699, 704–05 (7th Cir. 2016)); *see Cox*, 53 F.3d at 149.

Regardless, ERISA's preemptive scope presents a key legal "issue [indisputably] raised before the district court," so Commissioner Lawrence may assert "'any argument'" undermining preemption on appeal. *Chelf v. Prudential Ins.*, 31 F.4th 459, 468 (6th Cir. 2022) (quoting *Yee v. City of Escondido*, 503 U.S. 519, 534–35 (1992)).  And McKee has not meaningfully rebutted the Commissioner's savings clause arguments.

### 1. Pharmacy networking is an insurance-industry practice subject to state regulation.

McKee ignores the argument that pharmacy networking is an insurance-industry practice.  *Compare* Open. 43–47, *with* Resp. 51–57.  It follows that the Pharmacy Inclusion Laws "regulate[] insurance," which generally saves them from ERISA preemption.  29 U.S.C. § 1144(b)(2)(A).

### 2. PBMs must comply with state law when they make and maintain pharmacy networks.

Tacitly accepting that these laws regulate insurance, McKee claims they cannot regulate PBMs that provide products and services to "self-

24

funded" ERISA plans. *See* Resp. at 51–52. But nothing in ERISA "expressly removes self-funded plans from" either direct or indirect "state insurance regulation." *Id.* at 51. In fact, Congress did not use the term "self-funded plan" anywhere in ERISA at all. *See* 29 U.S.C. ch. 18.

Instead, *courts* coined the term "self-funded plan" to help explain ERISA's "deemer clause," *see, e.g.*, *Benvenuto v. Conn. Gen. Life Ins.*, 643 F. Supp. 87, 91 (D.N.J. 1986), which prevents States from "deem[ing]" any "[ERISA] plan . . . to be an insurance company . . . for purposes of" state insurance law, 29 U.S.C. § 1144(b)(2)(B). But this clause does not announce a hierarchy of ERISA plans, separating so-called "insured" plans from "self-funded" plans. *Compare* Resp. 51–53, *with* 29 U.S.C. § 1144(b)(2)(B). Instead, it merely prevents States from regulating ERISA plans directly *as insurers*, even though state law can indirectly impact those ERISA "plan[s] that purchase insurance." *Metro. Life Ins. v. Massachusetts*, 471 U.S. 724, 732 (1985).

The fact that some other "[f]ederal circuit courts [may] have" confused these "distin[ctions]" does not mean this Court should follow their lead. Resp. 54. To be clear, this case does not concern whether States can regulate PBMs "as . . . mere administrator[s]" of ERISA plans,

25

preventing PBMs from carrying out nondiscretionary edicts explicitly announced by ERISA plan sponsors in their plan documents. Resp. 55 (quoting *Nichols*, 227 F.3d at 336). Rather, the issue is whether "a state-law-free zone" emanates from ERISA plans, *SIIA II*, 827 F.3d at 555 (quoting *Associated Builders*, 543 F.3d at 284), giving PBMs immunity to act "as [unregulated] insurers," *Nicolopoulos*, 136 F.4th at 686.

Federal circuit courts have rejected that premise, holding that States can regulate PBMs and other services providers that do business with ERISA plans. *Compare PCMA v. Rowe*, 429 F.3d 294 (1st Cir. 2005) (concerning PBMs), *with Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692 (6th Cir. 2005) (concerning a "record keeper"); *Coyne & Delaney Co. v. Selman*, 98 F.3d 1457 (4th Cir. 1996) (concerning consultants); *Boyle v. Anderson*, 68 F.3d 1093 (8th Cir. 1995) (concerning healthcare providers). Much more importantly, this Court and others have held that States can regulate "insurer[s]" even when ERISA plans purchase their products and services. Resp. 55 (quoting *Nichols*, 227 F.3d at 336); *see* Open. 48–49 (collecting cases); *Nicolopoulos*, 136 F.4th at 686; *Lordmann Enters., Inc. v. Equicor, Inc.*, 32 F.3d 1529, 1533–34 (11th Cir. 1994); *Memorial Hosp. Sys. v. Northbrook Life*

*Ins.*, 904 F.2d 236, 250 (5th Cir. 1990). "[T]he [Supreme] Court acknowledged" this in *Metropolitan Life Insurance v. Massachusetts*, 471 U.S. 724 (1985), and it has been reaffirmed many times since. Resp. 53; *see* Open. 46. So the question in this case is *not* whether Tennessee can regulate PBMs when they make and maintain pharmacy networks — it can. *See supra* Part II.C.1; Open. 43–49. The question is whether the products and services MedImpact sells to McKee are the products and services of "an insurer." *Nicolopoulos*, 136 F.4th at 686.

Put differently, there *"is* [a] dispute" in this case about whether "McKee's health plan is self-funded" *in the sense* that would allow McKee to "rely on [ERISA's] deemer clause to avoid" the impact of the Pharmacy Inclusion Laws. Resp. 52 (emphasis added). The critical question is *who* — McKee or MedImpact — makes the pharmacy networking decisions for McKee's ERISA plan. Open. 50–53. And since the evidence could be read to indicate McKee simply "purchased access to 'the *MedImpact* [pharmacy] network'" and related services, McKee was not entitled to summary judgment as a matter of law. Open. 51 (quoting Plan Summary, R.118-1 at 1605 (emphasis added)); *see Cox*, 53 F.3d at 149.

27

### 3. The record in this case provides no basis to protect McKee's PBM from state regulation.

McKee thinks it can make up for its deficient record by claiming, over and over, that it was "involved" in MedImpact's decisions. Resp. 51; *see id.* at 56. But no language in ERISA exempts insurers from state regulation whenever an ERISA plan sponsor or fiduciary is somehow "involved" in the insurer's conduct. *See* 29 U.S.C. § 1144(b)(2)(B).

McKee responds by claiming it "must rely on . . . PBMs" if it wants to provide "pharmacy benefits," *id.* at 52, insisting that "a plan's choice" to "us[e] a PBM 'is in reality no choice at all,'" Resp. 56 (quoting *Mulready*, 78 F.4th at 1196). But how can the PBM's role be so indispensable if McKee is dictating all the networking decisions that require discretion? And why would the sheer importance of PBMs to ERISA plans bring their conduct outside the terms of ERISA's savings clause?

The answer is it cannot. ERISA preemption ends wherever state insurance regulation begins. *See Nicolopoulos*, 136 F.4th at 685. And any PBM that violates the Pharmacy Inclusion Laws "as an insurer" lacks an ERISA preemption defense. *Id.* at 686.

28

### III.    The district court granted improper relief.

Finally, McKee's brief reminds the Court that it reviews "[g]rants of declaratory and injunctive relief . . . only for abuse of discretion." Resp. 21. But district courts necessarily "abuse [their] discretion" when they "improper[ly] appl[y the] governing law." *Bazzetta v. McGinnis*, 430 F.3d 795, 802 (6th Cir. 2005). That is what happened here.

Specifically, the district court failed to observe the foundational principle that the only "appropriate subjects of judicial cognizance" are the relative "rights" of adverse litigants before the court. *Texas v. ICC*, 258 U.S. 158, 163 (1922). To be sure, those rights may turn on the "validity" of a legal provision in a particular "application or enforcement" context. *Id.*; *see Marbury*, 5 U.S. (1 Cranch) at 179–80. But that does not mean federal courts can "invalidat[e] laws" as an abstract matter, opine on the rights of nonparties, or address hypothetical circumstances. Resp. 58; *see Jackson*, 595 U.S. at 44; *Doe v. Lee*, 102 F.4th 330, 341 (6th Cir. 2024); *Wright*, 939 F.3d at 700–01.

McKee only highlights the importance of this limit on judicial power by telling the Court — over and over — to ignore legal arguments McKee believes have been "waived." Resp. 42; *see id.* at xi, 2, 21, 33, 49–50.

29

Make no mistake: "[t]he matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to [this Court's] discretion." *McFarland v. Henderson*, 307 F.3d 402, 407 (6th Cir. 2002) (quoting *Singleton v. Wulff*, 428 U.S. 106, 121 (1976)).  But if this Court declines to address any "purely [legal] question[s]," it necessarily cannot affirm the district court's overly broad remedial orders.  *Lockhart v. Napolitano*, 573 F.3d 251, 261 (6th Cir. 2009).

This is because the district court sought to declare the Pharmacy Inclusion Laws' validity as to this lawsuit *and others*.  *See* Open. 54.  But if "legal arguments" ignored here are pressed later, they may well "dictate . . . different outcome[s]" for other parties and circumstances.  *Loper Bright*, 603 U.S. at 426 (Gorsuch, J., concurring).  As for the injunction, McKee stresses that it only shields MedImpact from liability "'for actions . . . take[n] on the [McKee] Plan's behalf." Resp. 58 (quoting *McKee*, 2025 WL 968404, at *10).  But how can MedImpact receive such direct relief as a "nonpart[y]" — especially if this case does not address ERISA's savings clause?  *Lee*, 102 F.4th at 341.

These issues betray the basic flaw underlying McKee's lawsuit.  Its arguments assume federal courts may adjudicate abstract "challenge[s]"

to controversial "statutes" and government defendants raise "so-called threshold issues" only to "avoid" defending state laws "on the merits." Resp. xi, 36.  In truth, *courts* address threshold questions to make sure they are exercising judicial power.  *See L.W. ex rel. Williams v. Skrmetti*, 73 F.4th 408, 415 (6th Cir. 2023).  And state officers must establish a state law's validity each time they enforce it in a "concrete factual context."  *Ammex, Inc. v. Cox*, 351 F.3d 697, 706–07 (6th Cir. 2003).

Of course, McKee may feel injured by the very *existence* of the Pharmacy Inclusion Laws.  But that injury can only be redressed through state legislation, not federal court orders.  *See Jackson*, 595 U.S. at 44. The most a federal court can offer McKee is personalized protection from Commissioner Lawrence's "specified unlawful actions."  *Id.*  The district court tried to go further.  In so doing, the district court erred.

## CONCLUSION

This Court should reverse the district court's decision.

31

Dated: September 19, 2025

Respectfully Submitted,

Jonathan Skrmetti
  *Attorney General & Reporter*

J. Matthew Rice
  *Solicitor General*

Michael N. Wennerlund
  *Assistant Attorney General*

*/s/ Gabriel Krimm*
Gabriel Krimm
  *Senior Assistant Solicitor General*
State of Tennessee
Office of the Attorney General
P.O. Box 20207
Nashville, TN 37202
Gabriel.Krimm@ag.tn.gov
(615) 532-5596
    *Counsel for the Commissioner of*
    *the Tennessee Department of*
    *Commerce and Insurance*

32

## CERTIFICATE OF COMPLIANCE

This brief complies with the Court's type-volume limitations because it contains 6,473 words, excluding portions omitted from the Court's required word count.

This brief complies with the Court's typeface requirements because it has been prepared in Microsoft Word using fourteen-point Century Schoolbook font.

*/s/ Gabriel Krimm*
Gabriel Krimm

## CERTIFICATE OF SERVICE

On September 19, 2025, I filed an electronic copy of this brief with the Clerk of the Sixth Circuit using the CM/ECF system.  That system sends a Notice of Docket Activity to all registered attorneys in this case. Under 6 Cir. R. 25(f)(1)(A), "[t]his constitutes service on them and no other service is necessary."

*/s/ Gabriel Krimm*
Gabriel Krimm